JOHN A. MEADE,

*vs.*

PACIFIC GAMBLE ROBINSON CO., a corporation of the State of Delaware.

*New Castle, February 14, 1947.*

*William S. Potter* and *Richard F. Corroon,* of the firm of Southerland, Berl & Potter (*W. G. McLaren,* of Seattle, Wash., of counsel), for complainant.

*Hugh M. Morris* and *Alexander L. Nichols,* of the firm of Morris, Steel, Nichols and Arsht, for defendant.

SEITZ, Vice-Chancellor: This court must determine whether a dissenting stockholder, whose shares were appraised under *Section* 61 of our *General Corporation Law (Rev. Code* 1935, § 2093, *as amended by* 43 *Del. Laws, c.* 132, § 16), as it existed prior to the 1943 amendments (44 *Del. Laws, c.* 125, § 6), is entitled to interest on the appraised value from the effective date of the merger, or from some subsequent date. The question of assessing and apportioning costs is also involved.

Practically all the facts were made the subject of a stipulation, although a few additional facts were adduced at the final hearing.

Complainant, John A. Meade, was the record owner

of 8,845 shares of the common stock of Pacific Fruit and Produce Company, Inc., a Delaware corporation. On November 24, 1942, despite the adverse vote of complainant's shares, the Pacific Fruit and Produce Company, Inc., approved a plan of merger with Gamble-Robinson Company, also a Delaware corporation. The defendant, Pacific Gamble Robinson Company, is the corporation which resulted from the adoption of the merger plan, which plan was filed in the office of the Secretary of State and recorded on December 5, 1942.

On December 11, 1942, the complainant made written demand on the defendant for payment of his stock. On March 3, 1943, the defendant sent a letter to all dissenting stockholders stating that it was preparing a computation of the value which it would offer to pay for the shares held by the dissenting stockholders.

On or about June 3, 1943, the complainant by his attorneys communicated to the attorney for the defendant his offer in writing to accept the sum of $24.15 a share, together with interest at six per cent from December 5, 1942 as the fair value of his shares. Until the appraisers' award was made herein the defendant made no definite offer for the shares held by the complainant.

On August 2, 1943, the parties having failed to come to an agreement as to the value of his stock, the complainant demanded an appraisal thereof and designated one of the appraisers pursuant to the provisions of the appraisal statute. On September 7, 1943, the defendant designated a second appraiser, but the two appraisers so designated failed to appoint a third appraiser with the result that on November 9, 1943, the complainant here filed an action in the Superior Court of the State of Washington for the purpose of having that court appoint a third appraiser under *Section* 61 of the then existing *Delaware Corporation Law*. On December 6, 1943, the Washington court entered an order appointing a third appraiser. The Pacific Gamble

Robinson Company, defendant here, on appeal to the Supreme Court of Washington, had that court on November 28, 1944 reverse the order of the lower court, and direct the dismissal of the action on the ground that jurisdiction under the statute to make the requested appointment was limited to the Delaware Court of Chancery. See *Meade v. Pacific Gamble Robinson Co.*, 21 *Wash.2d* 866, 153 *P.2d* 686.

On January 19, 1945, the complainant, Meade, filed a petition in this court requesting the Chancellor to designate a third appraiser pursuant to *Section* 61 of the *Delaware Corporation Law* as it existed on December 5, 1942. Defendant filed a consent answer and on March 12, 1945, a third appraiser was appointed.

On August 5, 1946, the appraisers gave their written determination of the value of the stock owned by complainant as $14.40 per share as of the date of the merger.

On August 29, 1946, the defendant offered in writing to pay complainant the amount of the appraisers' award for each share of stock held by him. On September 17, 1946, complainant, by his attorneys, informed the defendant in writing that he would surrender his stock upon receipt of $14.40 per share " 'without prejudice to or waiver of his rights under the law, including but not limited to his rights to compensation for the use of his capital since the Merger, measured by interest or dividends, or such other method as may be applicable.' " On September 20, 1946, the defendant, by its attorneys, informed complainant that the offer to pay the appraisers' award " 'must be accepted as made and not conditioned upon agreement to further litigation or assertion of rights for compensation.' "

On September 30, 1946, the defendant, Pacific Gamble Robinson Company, filed its petition in this court, as part of the original proceeding, to compel complainant to transfer shares held by him and to tax the costs of the appraisal. The complainant, Meade, filed an answer and cross petition

thereto on November 4, 1946. In his cross petition Meade requested, *inter alia,* that the defendant corporation be ordered to pay interest on the principal amount of the award at the rate of six per cent for the period beginning December 5, 1942, and continuing until the date of payment, and that the costs and expenses of the appraisal be assessed against the defendant. Therefore, on October 3, 1946, complainant, Meade, had made demand in writing on the defendant for payment of the value of his shares as determined by the appraisers with interest at six per cent from March 15, 1943 (that date being three months after the date of Meade's original demand for payment).

The parties also set forth in their stipulation a list of the costs and expenses incurred by them in connection with the appraisal. A petition was also filed by the appraisers requesting the allowance of fees and expenses. I shall elaborate upon this phase of the case under the discussion concerning the assessment of costs.

The complainant, Meade, introduced documentary evidence tending to show the substantial profits made by the defendant in the four years since the merger. The defendant corporation took the position that such evidence was not relevant or material to a determination of the issues presented in this case.

After the matter came on for hearing on December 16, 1946, I entered an order directing the defendant to pay into the Registry of this court the principal amount of the appraisers' award. This was done. I directed that payment thereof (less $10,000 to cover any part of the costs and expenses which might be taxed against complainant) be made by the Register to the complainant on the same day he received the money. This was done on December 26, 1946.

Under this state of facts, I am called upon to determine:

(1) Whether complainant is entitled to interest on the amount of the award, and if so from what date, and

(2)   What costs should be allowed and how they should be allocated, if at all.

Complainant contends that he is entitled to interest on the appraised value of his shares from the date the plan of merger was filed with the Secretary of State, to wit, December 5, 1942.   He argues that the right given by the appraisal statute is analogous to the right of condemnation and that although the appraisal statute is silent on the subject of interest, nevertheless, interest should be allowed from the effective date of the merger because only by so doing can a dissenter receive just compensation for his shares.   Moreover, he continues, interest is allowed on unliquidated claims in Delaware, which is actually the nature of a dissenter's claim prior to the determination of value by the appraisers.

The defendant corporation contends on the other hand that complainant's right to interest must be found in the appraisal statute alone, and since that statute does not provide for interest either expressly or by fair implication, the complainant is not entitled thereto prior to the time that the corporation is obligated under the statute to pay the award.

The pertinent portion of the appraisal statute (since amended) provides:

"SEC. 61.   CONSOLIDATION OR MERGER; PAYMENT FOR STOCK OF DISSATISFIED STOCKHOLDER:—If any stockholder in any corporation of this State consolidating or merging as aforesaid, who objected thereto in writing, shall within twenty days after the date on which the agreement of consolidation or merger has been filed and recorded, as aforesaid, demand in writing from the corporation resulting from or surviving such consolidation or merger, payment of his stock, such resulting or surviving corporation shall, within three months thereafter, pay to him the value of his stock at said date, exclusive of any element of value arising from the expectation or accomplishment of such consolidation or merger.   If within thirty days after the date of such written demand the corporation and such stockholder fail to come to an agreement as to such value of such stock, such stockholder may demand an appraisal of his stock by three disinterested persons, one of whom shall be designated by the stock-

holder, one by the directors of the resulting or surviving corporation and the other by the two designated as aforesaid and may serve written notice on such corporation designating therein one appraiser and requiring the corporation to designate a second appraiser within thirty days from the date of service of such notice. If within thirty days from the date of service of such notice the corporation shall have failed to designate a second appraiser or if the two appraisers first designated shall fail to designate a third appraiser within thirty days from the designation of the second appraiser, such stockholder may apply to the Chancellor to designate a second and a third appraiser, or a third appraiser, as the case may be. The decision of the appraisers as to such value of such stock shall be final and binding upon the corporation and such stockholder. In case the value of such stock as so fixed by the appraisers is not paid to such stockholder within sixty days from the date of such decision and of notice thereof given to the corporation, the decision of the appraisers shall be evidence of the amount due from the corporation, and such amount may be collected as other debts are by law collectible from the resulting or surviving corporation. Upon receipt of payment in full of the value of such stock, such stockholder shall transfer his stock to the said resulting or surviving corporation to be disposed of by the directors thereof, or to be retained for the benefit of the remaining stockholders."

An examination of the statutory history of our corporation law reveals that at the time our *General Corporation Law* was enacted in 1899, 21 *Del.Laws c, 273*, provision was made for a consolidation or merger upon the affirmative vote of less than all the stockholders, and provision was also made for an appraisal in favor of dissenters. Since at common law any dissenting stockholder could prevent a merger, it is patent that the statute giving the right to merge upon the approval of less than all the stockholders had for its purpose the taking away of this right of a dissenting stockholder. In lieu of the right of a dissenting stockholder to block a merger, he was provided with a right to a statutory appraisal. See *Chicago Corporation v. Munds, 20 Del.Ch. 142, 172 A. 452.* Since the right to an appraisal in lieu of the right to defeat a merger was given by statute, it is not unreasonable to conclude that the statute is exclusive as to the rights given a dissenter who cares to proceed thereunder, at least to the extent the statute fairly

purports to cover the subject. See *Root v. York Corporation*, (D.C.) 56 *F.Supp.* 288.

Complainant tacitly concedes that the appraisal statute does not affirmatively authorize the payment of interest from the effective date of the merger. He argues, however, that the statute does not deny the right to such interest. Defendant urges that the statute not only does not authorize interest, but by implication denies it.

We commence then with the indisputable fact that the appraisal statute, at least in so many words, does not authorize the payment of interest. Nor, in my opinion, does it do so by fair implication. It would serve no useful purpose to dissect the language of *Section* 61 as to these points because the words thereof reasonably understood are not fairly susceptible of any other conclusion. I defer consideration of defendant's contention—vigorously disputed by complainant—that the statute by implication denies the right to interest.

Defendant would say that since I have concluded that the statute does not expressly or by fair implication authorize the payment of interest, my conclusion is dispositive of the case. It would base this contention on its claim that the statute is exclusive in so far as the determination of this matter is concerned—if the right is not given in the statute, it does not exist. However, complainant says that the appraisal statute does not purport to cover all the rights which a dissenter may have, and that among these rights not covered by the statute is the right to receive interest on the award from the effective date of the merger. The complainant's contention is substantial and troublesome.

In order to determine whether or not complainant's contention is meritorious, it is necessary to examine the relation of the merger statute to the appraisal statute and the relation of both to the "law" in the absence of statute. Would a merger statute authorizing less than all the stockholders to effectuate a merger be constitutional in the absence of any

appraisal statute for the benefit of dissenters? In my opinion, at least as to "non-vested rights," such a merger statute would be constitutionally unobjectionable. In such a situation the merger statute would in operation be not unlike an action under *Section* 26, *Rev.Code* 1935, § 2058, to amend a charter so as to change a "non-vested" right. In such a case *Section* 26 does not require unanimous vote and yet it gives the dissenters no right to an appraisal. The statute being part of the stockholder's contract, he cannot object to a change he has impliedly authorized by purchasing the stock. See *Hartford Accident & Indemnity Co. v. W. S. Dickey Clay Mfg. Co.*, 26 *Del. Ch.* 411, 24 *A.* 2d 315. The same would be true of a statutory merger.

A merger statute unaccompanied by an appraisal statute in favor of dissenters is not only constitutional (no vested right being involved), but lawful action thereunder gives dissenters no cause of action to recover the value of their shares. See *Mayfield v. Alton Railway Gas & Electric Co.*, 198 *Ill.* 528, 65 *N.E.* 100; *Root v. York Corporation, supra;* 15 *Fletcher Ency. Corp. (Perm.Ed.)* § 7164. However, there would appear to be authorities to the contrary, see, e. g., *State ex rel. Brown v. Bailey,* 16 *Ind.* 46, 47, 79 *Am.Dec.* 405, but I think such authorities are unsound.

Since in my opinion there may be a valid merger over the objection of a dissenter, even though no appraisal statute is provided for such dissenter, and since he has no cause of action in the absence of an appraisal statute (the merger being otherwise legal) it would seem to be a necessary inference therefrom that the substantial rights of a dissenter proceeding under an appraisal statute must be found in that statute. The right to interest would seem to be such a right.

Complainant argues, however, that the right to interest may be found from the very fact of the existence of a merger statute and an appraisal statute for dissenters. Thus, he points out that our Supreme Court in *Federal United Corporation v. Havender*, 24 *Del.Ch.* 318, 11 *A.2d* 331, 338, said

the statutes were "somewhat analogous to the right of eminent domain." Complainant shows that in eminent domain cases the condemnor must pay interest on the value of the property condemned from the date of the taking. He concludes that the same rule should be applied here. He cites, inter alia, *Seaboard Air Line Railway Co. v. United States*, 261 *U.S.* 299, 43 *S.Ct.* 354, 356, 67 *L.Ed.* 664, where it is said:

"Section 10 of the Lever Act authorizes the taking of property for the public use on payment of just compensation. There is no provision in respect of interest. Just compensation is provided for by the Constitution and the right to it cannot be taken away by statute. Its ascertainment is a judicial function."

Complainant also points to the following language in *Brooks-Scanlon Corporation v. United States*, 265 *U.S.* 106, 44 *S.Ct.* 471, 474, 68 *L.Ed.* 934:

"* * * And, if the taking precedes the payment of compensation, the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value paid contemporaneously. Interest at a proper rate is a good measure of the amount to be added. *Seaboard Air Line Ry.* [*Co.*] *v. United States, supra;* *United States v. Benedict,* 261 *U.S.* 294, 298, 43 *Sup. Ct.* 357, 67 *L. Ed.* 662; *United States v. Brown,* 263, *U.S.* 78, 44 *Sup. Ct.* 92, 68 *L. Ed.* [171], decided November 12, 1923."

How does the "just compensation" requirement in condemnation cases fit in with our merger and appraisal statutes? The difficulty with condemnation cases is that they involve a taking at the election of the condemnor, while in the case of a merger under the Delaware statute the dissenter is not required to seek an appraisal but may go along with the merger. Furthermore and of the utmost importance, in condemnation there is no agreement between the condemnor and the property owner, while in the case of a merger a dissenting stockholder when he purchases the stock contracts to be governed by the merger and appraisal statutes as construed. As the United States Supreme Court recognized in the *Seaboard* case above quoted, the right to "just compensation" in condemnation cases is a constitu-

tional right and cannot be impaired by statute. And as the quotation from the *Brooks-Scanlon* case shows, the addition of interest from the date of taking is required in condemnation cases in order to give the owner of the property such addition to the value at the time of the taking as will produce the full equivalent of such value paid, contemporaneously—the value plus interest constitute just compensation.

In other words, interest is an element in paying "just compensation" for the taking—and if the test of the appraisal statute was "just compensation" — then interest would have been a factor for the consideration of the appraisers. However, the appraisal statute does not lay down "just compensation" as the standard by which the appraisers are to be governed, but lays down the standard of the "value" of the dissenter's stock at the date the agreement of merger is filed and recorded. Thus, just compensation and value are not here synonymous as appears from the language of the Supreme Court in *Shoshone Tribe of Indians of Wind River Reservation in Wyoming v. United States,* 299 *U.S.* 476, 57 *S.Ct.* 244, 251, 81 *L.Ed.* 360, where it is said:

> "The claimant's damages include such additional amount beyond the value of its property rights when taken by the government as may be necessary to award of just compensation, the increment to be measured either by interest on the value or by such other standard as may be suitable in the light of all the circumstances."

The quoted language demonstrates that the "value" of the property at the time of the taking is one thing, while "just compensation" therefor constitutes the payment of its value plus something more, namely, interest. Since our appraisal statute limits the appraisers to the "value" at the effective date of the merger and since our statute is a part of the stockholder's contract, the condemnation analogy cannot be applied to resolve our problem.

Complainant intimates that the appraisal statute would be unconstitutional if it were to be construed as not allow-

ing interest. His theory apparently is that so construed the statute would not provide for just compensation, as he seems to think the constitution requires—even of an appraisal statute which is a part of the stockholder's contract. The distinction between the constitutional test of just compensation in condemnation cases and the statutory test of fair value in appraisal proceedings is substantial. The condemnation cases do not involve contract rights, while complainant's contract when he purchased the stock contained as a term thereof the appraisal statute as here construed. He cannot be said to have been deprived of the right to interest when he never had any such right under his contract. We are not here dealing with a so-called "vested" right.

Frankly, if I were free to do so, I would allow interest on the appraisers' award, since in my opinion the equities militate in the complainant's favor in that the corporation can have the use of complainant's capital (though its actual use is disputed here) for a period during which he may also be deprived of the attributes of stock ownership. Confessedly, however, something may be said on behalf of the corporation. Thus it would require the corporation to pay interest during a period when, assuming it to be acting in good faith, it had no duty to pay the principal sum. Moreover, the payment of interest might well result in the dissenter getting more benefit than he would have been entitled to receive had his original investment continued.

Reverting to the language of the appraisal statute, it would seem that the language of that statute, impliedly at least, denies the right to interest. Thus, it limits the appraisers' award to the value of the dissenter's shares at the date of the filing and recording of the plan of merger, exclusive of any element of value arising from the expectation or accomplishment of the merger. It further provides that the decision of the appraisers as to such value shall be final and binding upon the corporation and the dissenting stockholder. It then provides:

"* * * In case the value of such stock as so fixed by the appraisers is not paid to such stockholder within sixty days from the date of such decision and of notice thereof given to the corporation, the decision of the appraisers shall be evidence of the amount due from the corporation, and such amount may be collected as other debts are by law collectible from the resulting or surviving corporation. * * *"

If we assume a case where a dissenter has not been paid the award in the prescribed time and such dissenter has filed suit at law, it is apparent that the debt on which he would sue would be evidenced by the appraisers' award—*Section 61* so provides. Since the statute gives the corporation sixty days from the date of notice to the corporation of the award to pay the amount thereof, it would seem reasonable to conclude that in such lawsuit the dissenter could only recover interest for the period commencing sixty days from such date, in other words, from the time the corporation became absolutely obligated to pay. See *Superior Tube Co. v. Delaware Aircraft Industries*, (D.C., D.Del.) 60 *F.Supp.* 573, 575.

Since in my opinion in a suit at law on the award the appraisal statute would only permit payment of interest for the period commencing sixty days from the date of notice to the corporation of the award, I cannot see why the dissenter should have any greater right by way of additional interest because the case arises in this court through the need of the corporation for equitable relief.

Certain cases relied upon by complainant where interest was allowed are distinguishable on the ground that the mergers involved were illegal in some respect. See *Finch v. Warrior Cement Corporation*, 16 *Del.Ch.* 44, 141 *A.* 54; *Jones v. Missouri-Edison Electric Co.*, (8 *Cir.*) 233 *F.* 49. Such is not the case here.

Some of the other cases relied upon by complainant require discussion. In *Skipwith v. Federal Water & Gas Corp.*, 185 *Misc.* 248, 56 *N.Y.S.2d* 804, the New York Supreme Court was required to determine whether or not a dissenter

was entitled to interest on the award from the effective date of the consolidation. The case involved the same Delaware consolidation merger and appraisal statutes as are now before the court. The New York court allowed interest from the date of the consolidation on the theory, apparently, that it was "simple justice" to do so, even though the appraisal statute was silent on the point. With all deference to the court involved, I am compelled to disagree with this decision because I do not perceive it to be the judicial function under our system to employ the "simple justice" theory without regard to the legal principles surrounding the evolution of the merger and appraisal statutes, and more particularly the language of the controlling appraisal statute.

The unreported case of *In re Plummer* decided by the Chancery Court of the City of Richmond, Virginia in 1933 (petition for appeal rejected by the Supreme Court of Appeals of Virginia) involved the Virginia appraisal statute which was also silent on the question of interest. The Richmond Chancery Court allowed interest from the date of the merger apparently on the theory that it was in the interest of "justice" so to do, because the corporation had the use of the dissenters' property for that period. The opinion ignored entirely the effect of the merger and appraisal statutes in so far as the rights of the parties were concerned, as well as the fact that the statutes were a part of the stockholders' contracts. I am unable to agree with the conclusion reached by the court in that case.

There are substantial authorities holding that dissenters are not entitled to interest where the appraisal statute is silent on that point. See *In the Matter of Trask v. The Peekskill Plow Works*, 6 *Hun.* 236; *In re Erlanger*, 237 *N.Y.* 159, 142 *N.E.* 571; *American General Corporation v. Camp*, 171 *Md.* 629, 190 *A.* 225. While some of the reasons for the denial of interest given in these cases are applicable to our situation, I prefer to rest my conclusion that interest is not allowable principally on the grounds discussed herein.

I fully appreciate the policy argument in favor of providing interest for a dissenter in order that he may receive just compensation for his shares. Apparently the legislatures in New York and Maryland have since the decisions in the *Erlanger* and *Camp* cases seen fit to change their statutes in order to provide for interest. Since, however, I have concluded that the right to interest must be found in the statute, and since I have found that the appraisal statute not only does not authorize its payment but impliedly denies it, I am unable to award interest here on the basis of a so-called "enlightened view." I reluctantly conclude that enlightenment must come from the legislature.

Complainant asserts that even if he is not entitled to interest as a matter of legal right, interest should be awarded in the exercise of the equitable discretion of the Court of Chancery. Complainant predicates his request on the alleged substantial benefits derived by the defendant from the use of complainant's money since the date of the merger. While such a right doubtless exists in certain types of cases, in my opinion this is not a proper case for the exercise of this general equitable power. When, as here, the statute creates the remedy involved in the proceeding, and there is no illegality or other wrongful conduct on the part of the corporation, I think this court cannot properly grant interest on the basis of the general power. Moreover, it is very doubtful whether this court has jurisdiction to consider the problem of interest apart from the appraisal statute because our Supreme Court in *Salt Dome Oil Corp. v. Schenck*, 28 *Del. Ch.* 433, 41 *A.* 2d 583, 158 *A.L.R.* 975, indicated that the appraisal statute defined the ambit of the Chancellor's jurisdiction in proceedings thereunder.

The defendant corporation will, therefore, pay interest at the legal rate on the appraised value of complainant's stock for the period commencing sixty days after notice of the appraisal was given the corporation and terminating when the amount of the award was paid into court.

This court must determine what costs are to be allowed and how they should be apportioned, if at all. Complainant claims that the following general items paid by him should be considered as part of the costs of this proceeding:

1. Traveling expenses in connection with the appraisal proceeding generally.

2. Telephone, telegraph, office expenses, including paper, typing, etc.

3. Advance for costs of filing suit.

4. Cost of court reporter at appraisal hearing.

5. Court costs of this proceeding.

6. Appraisers' fees and expenses.

*Section* 61 provides with respect to costs as follows:

"The cost of any such appraisal, including a reasonable fee to each of the appraisers, may on application of any party in interest be determined by the Chancellor and taxed upon the parties to such appraisal, or either or both of them, as may appear to be equitable."

The parties are in agreement, and I think properly so, that the court costs here, the appraisers' fees and expenses and the costs of the court reporter are all proper items to charge as costs. I think the advance for costs made by complainant is also a proper element of cost here. The reasonableness of the amounts involved are not attacked and I conclude that they are fair.

I do not believe the other items claimed by the complainant should be considered as part of the costs. My conclusion is based on the fact that such items are the natural burden of any individual involved in litigation, whether or not he is successful. The line must be drawn and I do not believe that it is unfair to limit costs in the manner indicated.

In view of the conclusion hereafter reached that the entire costs should be assessed against the defendant corporation, it is unnecessary to determine whether defend-

ant's claim for allowance of accounting fees as costs should be approved.

Complainant claims that the entire costs should be assessed against the defendant corporation, while the defendant takes the position that they should be apportioned equally. Certain it is, as complainant states, that if he is forced to pay part of the costs, then he will not be receiving the full value of his shares. However, the statute itself contemplates that very possibility when it leaves the matter of assessing costs in the discretion of the court.

In this particular case it cannot be fairly said that complainant has acted other than in the utmost good faith. Defendant points to the delay occasioned by the complainant's unsuccessful attempt to have the third appraiser appointed in the State of Washington. However, the lower court there agreed with complainant and the highest court, while reversing the order of the lower court, was split five to four. Complainant's position when supported by such a substantial number of the Washington judiciary can hardly be said to constitute the basis for the conclusion that complainant was acting in bad faith.

The complainant made a demand for payment and while the amount requested was substantially in excess of the valuation subsequently placed on his shares by the appraisers, it must also be pointed out that the defendant corporation never made an offer although it indicated by a communication to the dissenting stockholders that in due course it would make an offer to purchase their shares at a definite figure.

Weighing all the facts available to me and considering the nature of the proceeding, I conclude that all the costs should be assessed against the defendant corporation. While there doubtless may be cases when an apportionment of costs would be in order, I do not believe that this is such a case.

A decree will be entered dismissing the cross petition and directing the transfer of complainant's stock to the defendant corporation upon the payment by it of interest at the legal rate on the award from the period commencing sixty days after it received notice of the appraisers' award and terminating on the date when the amount of the award was paid to the Register in Chancery. The decree will also direct the Register in Chancery to pay to complainant the $10,000, presently retained by the Register to secure the payment of such costs as might have been assessed against complainant.

Note. Appeals to the Supreme Court were taken by both parties to this proceeding.