ABRAHAM SHRAGE,

Plaintiff,

ABRAHAM ROSENSTEIN,

Intervening Plaintiff,

*vs.*

BRIDGEPORT OIL COMPANY, INC.,

Defendant.

*New Castle, September 2, 1949.*

*Arthur G. Connolly.* and *Januar D. Bove, Jr.,* (Halperin, Natanson & Scholer, of New York City, of counsel), for plaintiff and intervening plaintiff.

*Hugh M. Morris,* of the firm of Morris, Steel, Nichols & Arsht, for defendant.

SEITZ, Vice Chancellor: This is the decision on plaintiffs' application for a preliminary injunction and receiver *pendente lite.*

Plaintiffs are stockholders of the defendant Bridgeport Oil Company, Inc., a Delaware corporation. By resolution of the defendant's board of directors, and with subsequent adequate stockholder approval, the defendant corporation was dissolved pursuant to *Section* 39 of the *General Corporation Law of Delaware, Rev.Code* 1935 § 2071. At the time of the dissolution of defendant corporation, which was to take effect on April 30, 1949, its assets fell into four general categories:

(1)  Interests in oil and gas producing leases, equipment used in connection therewith or allocated thereto, and royalty interest;

(2)  Interest in leases for non-producing or "wildcat acreage";

(3)  Cash and bonds converted into cash; and

(4)  Material and supplies not allocated to producing oil and gas leases; drilling rigs, furniture and fixtures; warehouse building and shop equipment, etc.; cars, trucks and trailers.

As to the property in categories 1 and 2, the plan of dissolution calls for its distribution in kind to the stockholders (except treasury stock) in proportion to their stock ownership.  With respect to category 3, the plan calls for immediate distribution to the shareholders of $4.00 a share in cash, and thereafter any further cash resulting from the settlement of its affairs.  The property included in category 4 was sold privately to Cooperative Refinery Association (hereinafter called "Refinery").  Partial distribution of the cash has already been made.  Counsel for defendant agreed to cease further distributions pending this decision.

Aside from the cash and bonds, the defendant corporation's principal assets consisted of undivided interests in oil and gas leases, both producing and non-producing (categories 1 and 2).  Under the plan of dissolution, these leases or interests were to be distributed in kind to the common stockholders in proportion to their stock ownership.  Since one stockholder, Refinery, owned approximately 90% of the 267,200 shares of the defendant's outstanding stock, it is evident that it was in a position to vote to approve any plan of dissolution.  While Refinery, through its stock ownership, was in a position to require the defendant corporation to dissolve pursuant to *Section* 39 of the *General Corportion Law*, nevertheless, as such majority stockholder it was under an obligation to adopt a plan of dissolution

which would be fair to all the stockholders of the defendant corporation. The fairness of the plan adopted must be tested in the light of the fact that it provides for a distribution in kind of assets which are peculiary valuable to Refinery because these lease interests "fit" right into Refinery's business. Indeed, Refinery has taken over their operation.

The problem from the point of view of the small stockholder who will receive an infinitesimal interest in many leases is quite different. No offer to purchase the interest of the minority stockholders was provided for in the dissolution plan. Refinery did make an offer to purchase such interest at $12.50 per share. Because of Refinery's overwhelming stock ownership in the defendant, I feel that this court is entitled to consider this offer in determining, at the preliminary injunction stage, whether or not the plan of distribution in kind was fair to the minority stockholders. A plan of distribution could be so designed as to force small investors to sell their interests. Such a plan would obviously be suspect if accompanied by an unreasonably small offer by the dominating stockholder. It becomes of importance, therefore, to determine whether or not Refinery's offering price was reasonable under the circumstances.

The papers before me demonstrate that Refinery itself had offered to sell its stockholdings in defendant to an independent corporation at the price of $12.50 per share not many months before the dissolution. A reputable appraiser had appraised the oil producing wells at about the same time, and his conclusion apparently formed a partial basis for a $10.00 per share counter offer made to Refinery. The size of the block of stock does not appear to have influenced the price. The one doubtful point here arises from the fact that the defendant did not have the oil and gas lease interests appraised, presumably because it felt that a distribution in kind could not be considered unfair. While equality is equity, nevertheless, it is quite conceivable, as heretofore indicated, that distribution in kind of assets

of this type, particularly to those with small interests, would not result in real equality. Its effect could obviously be coercive, especially when accompanied by an offer to purchase the stock for cash. However, I have examined the papers submitted in connection with this application, and I have considered the offer of $12.50 per share made by the controlling stockholder. Under the facts presently available, the plaintiffs have not made out a case for interlocutory relief. Consequently, no preliminary injunction can be granted on the basis of the contention that the distribution-in-kind aspect of the dissolution plan will be unfair to the minority stockholders.

The legality of the manner of disposing of the property mentioned in the 4th category must be tested by the principle that where the purchaser controls the seller, those seeking to uphold the transaction must assume the burden of demonstrating the entire fairness of the purchase. Compare *Kennedy v. Emerald Coal & Coke Co., 26 Del.Ch.* 302, 28 *A.2d* 433, *affirmed* 28 *Del.Ch.* 405, 42 *A.2d* 398. This property, which constituted but a relatively small part of defendant's assets, was sold by defendant to Refinery—which controlled defendant. The plan of distribution and the sale to Refinery of the assets mentioned in the 4th category was approved by a vote of 244,888 shares to none, out of a total of 267,200 outstanding shares. It is evident, however, that the property in the 4th category was being sold to a 90% stockholder after approval by the board of directors most of whose members were in some way connected with the 90% stockholder. In this situation, as defendant concedes, the fairness of the sale will be rigorously scrutinized, and the defendant must assume the burden of demonstrating the sale was fair to all the stockholders of the defendant corporation.

Defendant urges that the undisputed facts demonstrate the entire fairness of the consideration paid for such assets. Refinery offered for the assets mentioned in category 4 the

sum of $296,632.48. Plaintiffs allege that the property had a value far in excess of this amount. Defendant has filed numerous affidavits with respect to these properties. One of these affidavits shows that the value of the property in question was on the decline at the time of the proposed sale. This is not denied. Moreover, the defendant had independent appraisers appraise most of the various items of property and the aggregate appraised value was almost identical with the value placed on the property by the board of directors. The property in question was sold to Refinery for $296,632.48.

It was subsequently determined by an independent audit that certain assets and possible liabilities had been overlooked in determining the value for purposes of accepting Refinery's offer. Upon request, Refinery immediately paid defendant about $20,000.00 to cover the value of the additional assets. It also assumed the liabilities. Plaintiffs make much of these facts. However, the independent audit which revealed the additional assets and possible liabilities was authorized by defendant even before this suit was commenced. The charge that some wrongdoing was involved is not supported by the present record. Nor were the apparent oversights so serious as to warrant the conclusion that a receiver rather than the defendant's board should continue with the liquidation.

We thus have defendant's case in favor of the fairness of the sale price of the category 4 property supported by the affidavits of independent appraisers and the affidavit of one familiar with the market value of such property at the time of the sale, plus the audit. These affidavits support the fairness of the consideration to be received for such property. In opposition to the case made out by defendant, we have only the claim by plaintiff that the property "might have been sold in an orderly and prudent liquidation for a great deal more than that amount." Plaintiffs, in support of their application for a preliminary injunction, relied entirely upon their verified complaint, and certain

testimony adduced by them on deposition. Their complaint does not aid them on the present application because of the absence of allegations of undisputed facts here material. Their facts, so far as they are found in the deposition of one of defendant's witnesses, fail to show unfairness in arriving at a consideration for the assets mentioned in the 4th category.

Plaintiffs concede that we are not now concerned with the power of Refinery to vote for this dissolution. Their quarrel seems to be with the fact that defendant is dominated and controlled by Refinery through its overwhelming stock ownership of the defendant. Such ownership does not preclude a dissolution where the fairness of the plan to all the stockholders is demonstrated. Nothing in the papers at this stage appears to warrant this court in exercising its power to interfere with the plan of dissolution, or with the officials of the defendant corporation who are effectuating it.

Plaintiffs say that the rights of the minority stockholders who receive small interests in many leases will be trampled by Refinery. This court cannot assume, and is not entitled to conclude on the present showing that Refinery will ignore the obvious legal obligation it owes and will continue to owe to such minority interests, both in connection with the dissolution and the operation of any of the leased properties. While some formal action giving Refinery the right to operate the properties leased by the defendant corporation would have been desirable, I do not believe the absence of such formal action entitles plaintiffs to the requested relief because no injury therefrom has yet been shown and Refinery does have approximately a 90% interest in any such property. I, therefore, conclude that plaintiffs have not made such a showing as to entitle them to a preliminary injunction restraining the further distribution of assets, or the appointment of a receiver *pendente lite*.

An order accordingly will be entered on notice.