AIDA ABELOW and HELEN G. HAMBURG,
Plaintiffs,

*vs.*

GARDNER SYMONDS, et al.,
Defendants.

*New Castle, Nov. 25, 1959.*

*Russell J. Willard, Jr.,* of Hastings, Lynch & Taylor, Wilmington, for plaintiffs.

*Henry M. Canby* and *E. Norman Veasey,* of Richards, Layton & Finger, Wilmington, for corporate defendants.

MARVEL, Vice Chancellor: This action by holders of common stock of Midstates Oil Corporation as originally designed sought an order restraining the proposed sale by that corporation of its assets and properties to the defendant, Middle States Petroleum Corporation, the owner of 95.93% of the common stock of Midstates. The original complaint was filed on December 29, 1958, the eve of a stockholders' meeting called to approve such proposed sale of assets and consequent liquidation of Midstates under a plan which provided for the payment of $1,125 for each share of such stock to be surrendered under the plan. Also named as defendants in the action were present and former officers and directors of Midstates and Middle States, and Tennessee Gas Transmission Company, a corporation allegedly in control of Middle States which, according to the complaint, had through an exercise of such control brought about an exchange of stock whereby Tennessee Gas had become the holder of 92% of the outstanding shares of Middle States. The original complaint alleged that the contemplated liquidation of Midstates had been engineered for the ultimate benefit of Tennesseee Gas and to the injury of the minority stockholders of Midstates, that the minority stockholders of Midstates should have been accorded the opportunity to exchange their shares for Tennessee Gas shares, and that in any event the fair market value of the stock of Midstates as of December, 1958 was at least $1,708 rather than $1,125 per share. Fraud and concealment in the disclosures made to the stockholders of Midstates concerning the transaction under attack were charged, and, couched in derivative form, the complaint sought not only interlocutory but final relief in the form of an

injunction against the consummation of the proposed sale of the assets and properties of Midstates to Middle States.

A motion for a temporary restraining order, brought on without notice, having been denied, the complaint was dismissed on February 9, 1959, on the grounds that the cause was moot inasmuch as injunctive relief alone had been sought in the complaint and the transaction sought to be enjoined had in the meantime been consummated. However, the effect of such order of dismissal was suspended in order to permit plaintiffs to move for leave to amend their complaint. Thereafter, plaintiffs filed several motions not only to amend but also to supplement the complaint by pleading matters which have taken place since the consummation of the questioned sale and liquidation, and this is the Court's opinion on whether or not leave to file such amendments should be granted. Defendants oppose all of plaintiffs' proposed amendments on the basic grounds that on their face they fail to state a cause of action cognizable in this Court.

Considered factually the proposed amendments first of all elaborate on the steps allegedly taken by the corporate defendants preliminary to the sale and liquidation complained of, making the contention that Tennessee Gas had acquired control of Middle States for the specific purpose of gaining Midstates' production income and freezing out plaintiffs, and alleging on information and belief that subsequent to the acquisition of 92% of the Middle States stock by Tennessee Gas in July, 1958, higher offers were made for the assets of Midstates than the $24,947,610 December offer of Middle States. Allegations of director bad faith are spelled out, a conspiracy between the directors of Tennessee Gas and of Middle States designed to defraud the plaintiffs and other minority stockholders of Midstates is charged in some detail, and a decree adjudging defendants liable to plaintiffs for their damages and requiring defendants to account to plaintiffs for the alleged breaches of fiduciary duty complained of as prayed for.

While the proposed consolidated amended complaint retains certain indicia of a derivative suit such as the stating of reasons for not making a demand on corporate directors to correct the matters complained of, it discloses that plaintiffs are no longer stockholders of

Midstates, having tendered their stock in return for the proffered liquidation payment of $1,125 per share in July 1959. Furthermore, as noted above, plaintiffs seek nothing for their erstwhile corporation but rather damages and an accounting of their alleged personal losses. Finally, if the format of the complaint were not clearly indicative of the fact that plaintiffs' action is no longer a suit brought on behalf of Midstates, their brief makes it entirely clear that plaintiffs now seek individual rather than derivative relief.

Plaintiffs, in support of their contentions that they are entitled to bring a class suit for individual relief, cite a number of cases from jurisdictions other than Delaware in which stockholders have in certain situations been permitted to make direct and individual claims, generally in connection with the liquidation of a dissolved corporation. And while not cited by plaintiffs, a so-called "spurious" or non-derivative class action brought on behalf of stockholders allegedly defrauded in the course of liquidation of their corporation was sanctioned in *Zahn v. Transamerica Corporation, 3 Cir.*, 162 *F.2d* 36, 172 *A.L.R.* 495, a case in which plaintiff professed to be suing not on behalf of his dissolved corporation but on his own behalf and that of other stockholders of his class. Compare *Southern Pacific Co. v. Bogert,* 250 *U.S.* 483, 39 *S.Ct.* 533, 63 *L.Ed.* 1099.

Defendants on the other hand, while conceding that a stockholder may sue personally for the purpose of correcting abuses such as the improper transfer of his stock, the wrongful retention of due but unpaid dividends, or for an order granting inspection of corporate records, contend that plaintiffs' action here is clearly for the correction of injury to their corporation, a body politic, a fact which was recognized in plaintiffs' original complaint. Defendants submit that it is clearly established in Delaware that any recovery gained as a result of the establishing of contentions such as those made by plaintiffs must be paid over to the entity injured in the first instance, namely the corporation, *Keenan v. Eshleman,* 23 *Del.Ch.* 234, 2 *A.2d* 904, 120 *A.L.R.* 227, *Taormina v. Taormina Corporation,* 32 *Del.Ch.* 18, 78 *A.2d* 473.

Plaintiffs insist, however, that the dissolution of Midstates has led to the conversion of what was originally a derivative action into

a personal one,[1] *Lebold v. Inland S. S. Co., 7 Cir.,* 82 *F.2d* 351, *Lebold v. Inland Steel Co., 7 Circ.,* 125 *F.2d* 369, *Gardiner v. Automatic Arms Co., D.C.,* 275 *F.* 697, *Vol.* 33, *Yale Law Journal,* p. 593, their theory being basically that upon corporate dissolution stockholders become the owners of their corporation's property. Defendants point out, however, that § 278 of Title 8 Del.C. expressly provides that "All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution, bodies corporate," and that there is no reason why a suit brought derivatively on behalf of a dissolved Delaware corporation may not be properly instituted within such statutory period, *Anderson v. Derrick, Cal.,* 26 *P.2d* 463 and 220 *Cal.* 770, 32 *P.2d* 1078.

Defendants argue that notwithstanding the very large holdings of Midstates stock which stood in the name of the purchaser, Middle States, nonetheless there is no sound basis under Delaware law for a direct claim by a stockholder in a case of alleged corporate wrongdoing and that to disregard a corporate entity in a case such as this might lead to a veritable deluge of individual stockholder[2] suits against persons charged with breach of their fiduciary duty.

In the case of *Taormina v. Taormina Corporation,* supra [32 *Del. Ch.* 18, 78 *A.2d* 475], a suit "* * * brought as a class action under Rule 23 on their behalf and on behalf of and all other stockholders * * * similarly situated * * *" upon which defendants heavily rely, it was argued that because the only stockholder who could

---

1. The Lebold opinions, while allowing damages to plaintiffs, nowhere discuss the basic distinction between a derivative and a personal action, however, the facts of the case are closely analogous to those alleged here, including a charge of freezing out of the minority by a majority stockholder by means of a dissolution plan.

2. The case of *Shrage v. Bridgeport Oil Co.,* 31 *Del.Ch.* 203, 68 *A.2d* 317 and 31 *Del.Ch.* 305, 71 *A.2d* 882, an action brought to restrain the consummation of a dissolution plan similar in many respects to the one here involved, was apparently a class action of a non-derivative sort. The flexibility evidenced there by the Court in doing equity in a sale of assets case involving liquidation was foreshadowed in *Finch v. Warrior Cement Corporation,* 16 *Del.Ch.* 44, 141 *A.* 54.

have been injured as a result of the actions of the individual defendants was the person on behalf of whose estate the suit was brought, the suit was therefore in fact one for individual redress and should have been so cast rather than as a suit for corporate relief. It appears from the pleadings that plaintiffs were concerned with the unauthorized taking over of corporate assets rather than a freeze out and there is no indication that assets were sold pursuant to a dissolution plan. In other words defendants were charged with appropriating the corporation's business, tendering in return therefor an inadequate consideration. In declining to accept the defendants' contention, then Chancellor Daniel F. Wolcott stated after quoting language of the Delaware Supreme Court on the rationale of an action for corporate redress (*Keenan v. Eshleman,* supra) :

> "The relief to be obtained in a derivative action is relief to the corporation in which all stockholders, whether guilty or innocent of the wrongs complained of, shall share indirectly. Indeed, it is doubtful whether the result would be different even if the suing stockholder owned all of the stock of the wronged corporation, *C. F. Brodsky v. Frank,* 342 *Ill.* 110, 173 *N.E. 775*" [32 *Del.Ch.* 18, 78 *A.2d* 476].

Logically, there would appear to be no valid reason for varying this rule where all but a small number of shares were held as here by one of the alleged corporate wrongdoers if the wrongs here complained of are clearly wrongs claimed to have been suffered by Midstates and not by plaintiffs as members of a class. However, the simple fact is that plaintiffs purport to seek redress for injuries which they claim are of a personal and primary nature, and while a plaintiff may not characterize an action as non-derivative when in fact it seeks relief for a wrong to his corporation, I am not convinced that plaintiffs should be summarily denied the right to couch their complaint in terms which seek a remedy for alleged personal injury to a class of stockholders as opposed to the theoretical injury to a now dissolved corporate entity, 95.93% of the stock of which was owned by the corporation which under Tennessee Gas's domination allegedly acquired the assets of Midstates for an inadequate price.

■ The line of distinction between derivative suits and those brought for the enforcement of personal rights asserted on behalf of a class of stockholders is often a narrow one, the latter type of actions being designed to enforce common rights running *against* plaintiffs' own corporation or those dominating it, while the former are clearly for the purpose of remedying wrongs *to* the corporation itself, 3 Moore's Federal Practice, 2nd Ed., § 23.16 et seq. .

■ Rule 15, Chancery Court Rules, Del.C.Ann., provides that leave to amend shall be freely granted when justice so requires. In my opinion the proposed amendments to plaintiffs' complaint sufficiently meet the prerequisites for a non-derivative class suit laid down in *Zahn v. Transamerica Corporation,* supra, and clearly implied in the Lebold cases, supra, and should be permitted to be filed.

■■ As to the objection that this Court is without jurisdiction to try a class suit for damages it would appear that such suits have been long recognized as being a party of equity jurisprudence, 19 *Am.Jur., Equity,* § 124, a fact which is reflected in the court rules of this state. Even were this not so, equity having taken jurisdiction of a case should in order to avoid a multiplicity of suits assume jurisdiction of the entire subject under litigation, *Cohen v. Markel,* 35 *Del.Ch.* 115, 111 *A.2d* 702.

■ Finally, in the light of the present theory of their case the acceptance by plaintiffs of liquidating dividends does not work an estoppel to their right to bring this action, *Lebold v. Inland Steel Co.,* supra.

On notice an order granting plaintiffs leave to file their proposed amendments will be entered.