**Gerald LACHMAN, Plaintiff,**

v.

**Harold K. BELL, Defendant.**

**No. 72 Civ. 2816.**

United States District Court,
S. D. New York.

Nov. 30, 1972.

Pollack & Singer, New York City, for plaintiff by Barry H. Singer, Martin I. Kaminsky, Neil D. Thompson, Richard M. Asche, New York City, of counsel.

Royall, Koegel & Wells, New York City, for defendant by Norman S. Ostrow, John H. Carley, New York City, of counsel.

GURFEIN, District Judge.

This is a diversity case in which a motion has been made to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). Affidavits have been submitted but they are not sufficiently comprehensive for the Court to treat the motion as one for summary judgment. I, therefore, exclude matters outside the pleading. Rule 12(b)(6). For purposes of the motion to dismiss, the allegations are taken to be true.

The complaint alleges as follows:

The defendant Bell was the principal officer and a director of Module Communities, Incorporated (MCI), a Delaware corporation,[1] with its principal place of business in New York. On March 14, 1969, the plaintiff entered into an agreement referred to as the "Founders Agreement" with MCI, Bell and others to purchase shares of common stock in MCI. The Founders Agreement provided that (1) each subscriber would pay $1,510 per share and that the shares would be split 1,000 to 1, making the actual purchase price $1.51 per share; (2) if any Founder received an offer to purchase his shares, MCI would have the option to repurchase them at the offer price or $1.51, whichever was lower; (3) upon the involuntary or voluntary liquidation, dissolution or winding up of the affairs of MCI, the owners of the shares in the corporation *other than* Founders shares would be entitled to receive $55.55 per share, *before* the Founders participated in any distribution. The defendant purchased 30,000 Founders shares for $45,300. The plain-

---

1. Although the complaint says it is a New York corporation, both parties ac- knowledge that MCI was a Delaware corporation.

tiff purchased 600 Founders shares for $906.

On June 25, 1969 the plaintiff entered into an agreement with MCI, Bell and others to purchase additional shares of MCI. This so-called "Investors Agreement" provided for the payment by investors of $55.55 per share. The defendant purchased 3,380 shares of Investors stock for $187,659 and the plaintiff purchased 1,800 Investors stock for $99,990. Accordingly, the total amount invested by the plaintiff for 2,400 shares of stock in MCI was $100,896, and the total amount invested by the defendant for 31,800 shares was $232,959.

Some time later, MCI experienced severe financial difficulty and it appeared that the corporation would have to be liquidated or its affairs wound up. Thereafter, in the Summer of 1971, Starrett Housing Corporation (Starrett) expressed an interest in acquiring the business and assets of MCI. The plaintiff participated in the initial discussion when it was agreed that Starrett would acquire the business and assets of MCI pursuant to a formula which would recognize the right of owners of the MCI Investors shares to receive $55.55 for each of their shares of MCI stock before any payment to the owners of the Founders shares.

Thereafter the defendant Bell excluded the plaintiff from the discussions with Starrett and rearranged the terms of the purchase so as to eliminate the preference to the Investors shares and to convert the transaction into one in which the defendant would realize a substantial profit while the other shareholders sustained a substantial loss. Pursuant to these discussions from which the plaintiff was excluded, Starrett, on January 14, 1972 offered to exchange stock of Starrett pro rata in exchange for all the stock of MCI. Each share of Founders stock (which cost $1.51 per share) and each share of Investors stock (which cost $55.55 per share) was to be exchanged for the same number of shares of Starrett.

The plaintiff objected to the plan when it was presented to the board of directors. He demanded that the transaction be recast so that MCI would sell its assets to Starrett and then liquidate, in which event the Investors shares would be paid $55.55 per share before the Founders shares would participate in the distribution. As an alternative, the plaintiff proposed that since the Starrett offer was for the purchase of shares, MCI had the option to purchase the Founders shares at $1.51 per share under the Founders Agreement. He offered to advance the funds necessary for MCI to make the purchases. The defendant Bell opposed plaintiff's plan and favored the proposal he had arrived at with Starrett.

It is further alleged that the defendant unlawfully participated in the discussions, deliberations and vote of the board of directors of MCI and that he threatened to prevent a transaction with Starrett unless the board defeated the plaintiff's proposal and adopted the merger proposed by Bell. It is further alleged that the board was coerced into ratifying the plan, and that Bell by virtue of this coercion dominated and controlled both the board and enough MCI shares to cause ratification of the merger agreement. It is also alleged that the defendant breached his fiduciary duty to the shareholders of MCI and acted for his own selfish interest by refusing to adopt either plan suggested by the plaintiff to effectuate the clear intent of the Founders Agreement. Damages in the amount of at least $101,706 are claimed.

There is also a second claim for relief which, after realleging the first claim, alleges that the defendant breached the Founders Agreement with the plaintiff.

I

■ The first claim for relief is based upon a breach of fiduciary duty by the defendant as an officer and director of MCI, a Delaware corporation. Such a claim is governed in New York by the law of the State of incorporation

which is Delaware. (Hausman v. Buckley, 299 F.2d 696 (2 Cir. 1962); Restatement 2d, Conflicts of Law § 309 (1969).)

To find the governing Delaware case law we must analyze the nature of the complaint. This is not a suit on behalf of the corporation. Nor is it a suit against the corporation. It is also not a class suit. The plaintiff sues as an individual shareholder. The sole defendant is its chief officer and director who was a large shareholder of not one class of shares but of two classes of shares. While both the Investors shares and the Founders shares were equal in the right to vote and receive dividends while MCI was a going concern, there were substantial differences in the rights of each class upon termination of the business by liquidation or the like. In such event, the holders of the Investors shares who had paid much more for their shares, were entitled to be paid in full before the Founders shares received anything. The priority thus established by agreement was much like the priority generally afforded preferred stock over common stock in a liquidation. If a choice should arise then between liquidation and some other form of cessation of business as a separate entity, an owner of more shares of one class than the other would presumably find conflict between his own private interest and that of other shareholders. If he owned more Investors shares he would prefer, for his own interest, to liquidate and thus obtain the priority to which those shares are entitled. On the contrary, if he owned more Founders shares, bought at a much cheaper price, he would, for personal reasons, favor a transaction in which all shares, Investors and Founders, were treated alike. In this case it was obviously to Bell's private interest to favor the latter course and to avoid a liquidation. Nevertheless, there is the possibility that no matter how much he wanted to serve the interest of all the shareholders against his own selfish interest he was unable to do so. If the corporation found itself in dire economic straits where the form of transaction could be dictated by the buyer, a form of transaction might have to be accepted which in its effect would destroy the liquidating priority of the Investors shares. In that case his action may be privileged. See Warshaw v. Calhoun, 221 A.2d 487, 492–493 (Del.Ch.1966); Abelow v. Midstates Oil Corp., 41 Del. Ch. 145, 189 A.2d 675, 678 (1963); MacFarlane v. North American Cement Corp., 16 Del.Ch. 172, 157 A. 396, 399 (1928).

This complaint quite clearly alleges that such was not the case. It states that the initial proposed transaction was to be a sale of assets and consequent liquidation. If that is taken as true, the subsequent activity of the defendant may well have directed to the furtherance of his own interest, which is mathematically demonstrable, rather than to the pursuit of some corporate objective. See Potter v. Sanitary Co. of America, 22 Del.Ch. 110, 194 A. 87, 91 (1931); MacFarlane v. North American Cement Corp., *supra*. It is true that at times an asset sale may not be in the best interest of the selling corporation, but such a determination should be made by directors with the sole benefit of the corporation and its shareholders in mind. Facts adduced at trial may, indeed, show that there never was such an inchoate asset deal or that Starrett unilaterally changed its mind. The complaint, however, does allege self-interest and breach of fiduciary duty in that the defendant himself changed the deal for no valid corporate purpose but rather to benefit himself. That is a sufficient allegation. See Abelow v. Symonds, 38 Del.Ch. 572, 156 A.2d 416 (1959); Zahn v. Transamerica Corp., 162 F.2d 36 (3 Cir. 1947).

The defendant alone could not have changed the deal, however, without the consent of his board of directors, but the complaint alleges that his threat to destroy the transaction coerced the board into the very action which was in the defendant's private interest. Thus, we have a claim that the defendant had

the *de facto* power to unmake the original transaction. This combination of conflict of interest and the alleged *de facto* power to resolve the conflict in his own interest defines the fiduciary duty of which the defendant is said to have committed a breach. See Guth v. Loft Inc., 23 Del.Ch. 255, 5 A.2d 503 (1939).

■ If, without justification, Bell harmed the plaintiff, a direct action, in addition to a derivative action, will lie. See Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919); Zahn v. Transamerica Corp., *supra.*

The defendant contends, however, that even if the complaint is sufficient on its face there are fatal objections to the plaintiff's claim. The defendant treats the complaint as simply an attack on the fairness of the merger. He argues that the ratification of the merger by the directors and by all but six per cent of the shareholders defeats the claim for relief. He contends that the plaintiff is remitted to his appraisal rights under the Delaware statute. He further contends that since the plaintiff has concededly exchanged his stock for the Starrett stock he has waived his claim.[2]

■ The action is for damages. The merger whether fair or unfair is an accomplished fact. The avenue of redress chosen by the plaintiff is an action against the defendant who was a co-founder of the corporation, a director and allegedly a coercive force in the deliberations of the board. He is not seeking to upset the merger or to hold the successor corporation liable. His complaint is that Bell was his trustee and was committed "to the stern demands of loyalty." Lofland v. Cahall, 13 Del.Ch. 384, 118 A. 1 (1922). See Keenan v.

Eshleman, 23 Del.Ch. 234, 2 A.2d 904, 907 (1938). In suing Bell directly he seeks to avoid the reach of the Delaware merger statutes and the question of the liability of the successor corporation. The fiduciary duty he asserts is a direct obligation to himself. For its breach he claims damages. The directors stand in a fiduciary relation not only to the corporation but also to its shareholders. Levien v. Sinclair Oil Corp., 261 A.2d 911, 914–915 (Del.Ch.1969); see Guth v. Loft, *supra.* And where different classes of stock are concerned, they stand in the same fiduciary relation to all such shareholders. Zahn v. Transamerica Corp., *supra.* Cf. Kahn v. Schiff, 105 F.Supp. 973 (S.D.Ohio 1952); Sinclair Oil Corp. v. Levien, 280 A.2d 717, 721 (Del.1971), modifying 261 A.2d 911 (Del.Ch.1969).

■ Ratification does not make an unconscionable deal conscionable "merely because most of the stockholders were either indifferent or actually in sympathy with the director's scheme." See Gottlieb v. Heyden Chemical Corp., 33 Del.Ch. 82, 88, 90 A.2d 660, 663, 665 (1952); see also Porges v. Vadsco Sales Corp., 27 Del.Ch. 127, 32 A.2d 148 (Del. 1943); Dolese Bros. Co. v. Brown, 39 Del.Ch. 1, 157 A.2d 784; Bennett v. Breuil Petroleum Corp., 34 Del.Ch. 6, 99 A.2d 236 (1953).

■ Nor does the Delaware appraisal statute (8 Del.Code § 252) mandate an exclusivity so embracing as to defeat every claim arising out of a statutory merger.[3] As the Chancellor said in Stauffer v. Standard Brands, Inc., 40 Del.Ch. 202, 178 A.2d 311, 314 (1962), aff'd, 41 Del.Ch. 7, 187 A.2d 78 (Sup. Ct.1962): "The courts of this state have, therefore, rightly held that in a

2. Although this contention is technically not within the scope of the Rule 12(b) (6) motion, I shall advert to it by way of comment since it has been raised.

3. See generally, Vorenberg, Exclusiveness Of The Dissenting Stockholders' Appraisal Rights, 77 Harv.L.Rev. 1189 (1963), 13 Fletcher Cyclopedia of Cor-

porations, c. 58 fails to cite Delaware as a jurisdiction where the appraisal statute is exclusive of all other remedies. See ¶ 5906.3. On the contrary, see Sterling v. Mayflower Hotel Corp., 33 Del.Ch. 293, 93 A.2d 107, aff'g, 33 Del. Ch. 20, 89 A.2d 862 (1952), where the fairness of a merger was considered without mention of the appraisal statute.

merger under sections 251 or 252 gross undervaluation of the shares of minority stockholders may be shocking to the court's conscience and, therefore, constructively fraudulent." The existence of the appraisal remedy does not foreclose the plenary jurisdiction of a court of equity to grant an injunction in advance of action or to grant a money award on equitable principles. See Weiss v. Atkins, 52 F.Supp. 418, 420 (S.D.N.Y.1943). Of course, actual resort to the appraisal procedure will limit the plaintiff to that procedure. See Loeb v. Schenley Industries, Inc., 285 A.2d 829 (Del.Ch.1971); Meade v. Pacific Gamble Robinson Co., 29 Del.Ch. 406, 51 A.2d 313 (1947). The plaintiff has not, however, sought appraisal.

 Nor is the acceptance of an exchange of stock a waiver of the plaintiff's claim. It is a proper attempt to mitigate damages. See Abelow v. Symonds, *supra.*

I conclude, therefore, that under Delaware law the Court would not dismiss the action but would let the cause proceed to trial even if the fairness of the merger were the cardinal issue. See Bastian v. Bourns, Inc., 256 A.2d 680 (Del.Ch.1969); Lewis v. Hat Corp., 38 Del.Ch. 313, 150 A.2d 750 (1959); MacFarlane v. North American Cement Corp., *supra*; see also Gottlieb v. Heyden Chemical Co., *supra.*

Since the first claim cannot be dismissed for the reasons stated, it is unnecessary to consider, at this time, the alternative basis for that claim. That alternative basis is that the offer by Starrett constituted an offer to purchase shares which, in turn, triggered the right of the corporation to purchase Bell's Founders shares for $1.51 per share, and that Bell thwarted that corporate opportunity.

## II

 The second claim for relief is based on breach of contract. The Founders Agreement was a New York contract, and as both parties agree, New York law governs. The agreement was "among themselves and the company." The avoidance of a contractual obligation by inducing corporate action which causes its breach may be actionable. See Sinclair Oil Corp. v. Levien, 280 A. 2d at 723. Such a claim may be not only derivative but also personal. See Buschmann v. Professional Men's Ass'n, 405 F.2d 659 (7 Cir. 1969); 13A Fletcher, *supra,* § 5921 (rev. ed. 1954). While I doubt that the restrictive provisions of the Founders Agreement were primarily for the benefit of the individual signatories rather than of the corporation, perhaps the plaintiff, as holder of *Investors* shares, is a third party beneficiary. And he may have a better claim for breach of the implied provisions of the Investors Agreement, including a duty of loyalty to co-signatories, than for a breach of the Founders Agreement. It would not be wise to anticipate the proof, however. Since I am, in any event, denying summary judgment on the first claim, I will also deny summary judgment on the second claim.

The motion to dismiss the complaint for failure to state a claim on which relief can be granted is denied.

It is so ordered.