**FELTY v. NATIONAL OIL CO. OF TEXAS et al.**

No. 11039.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 29, 1941.

Herbert Oliver and John Peace, both of San Antonio, for appellant.

Muckleroy McDonnold, of San Antonio, for appellees.

NORVELL, Justice.

This is an appeal from a judgment based upon a peremptory instruction. The appellant, Fred Felty, receiver of C. J. Webster Oil and Gas Company, a corporation, brought this suit against National Oil Company of Texas, a corporation, Commonwealth Oil Company, Inc., a corporation, E. C. Webster, Guy H. Poling and P. N. McCullough, seeking to cancel two assignments of oil and gas leases covering two tracts of land in Gregg County, Texas, containing 20 acres and 10 acres each, respectively, and recover title to said leas-

es for the benefit of the creditors and stockholders of C. J. Webster Oil and Gas Company. The suit sounds in fraud and the question presented is one of the sufficiency of the evidence to carry the suit to the jury under appellant's allegations.

The C. J. Webster Oil Company was originally organized as a common-law trust about March 25, 1931, with C. J. Webster as sole trustee. The trust indenture provided that the trustee might, at his option, organize a corporation and merge the assets of said trust into the corporation; the holders of units of interest in the trust automatically becoming stockholders in the corporation in the same proportion as that shown by their holdings of units of interest in the trust.

The contemplated corporation was actually organized and all assets, properties and rights owned or accruing to the trust were conveyed and transferred to the corporation. An instrument in writing bearing date of March 31, 1937, evidences this transaction. In other words, the trust estate was incorporated under the same name as that used by the trust, and C. J. Webster became president of the corporation. His wife, E. (Essie) C. Webster, became secretary-treasurer and C. W. Payne, vice president, of said corporation. The officers also constituted the board of directors.

On March 2, 1932, the C. J. Webster Oil and Gas Company assigned a leasehold interest, covering the 20-acre tract above mentioned, to National Oil Company of Texas, subject to an oil payment of $45,000. C. J. Webster was at that time the president of said National corporation, his wife was secretary-treasurer, and C. W. Payne, vice president. The three persons above named also constituted the board of directors of said corporation.

It also appears, according to the testimony of Mrs. Essie C. Webster, that some time in the early 1930's C. J. Webster, the witness, and C. W. Payne organized another corporation, Commonwealth Oil Company, Inc., which apparently had no real assets. It was a "paper company"; and "in 1933 or 1934, or maybe in 1932," the original incorporators "turned it over to P. N. McCullough." The evidence shows that McCullough was an employee of C. J. Webster, acting as field superintendent in East Texas for the C. J. Webster Oil and Gas Company and the National Oil Company of Texas.

McCullough testified that the Commonwealth was organized in 1934 or 1935 by the witness, C. J. Webster and his wife, Essie C. Webster. At some date not made entirely clear by the evidence, but apparently about the year 1938, the lease covering the 10-acre tract above mentioned was transferred to McCullough by the C. J. Webster Oil and Gas Company. McCullough, in turn, conveyed the same to the Commonwealth Oil Company, Inc.

On January 2, 1938, C. J. Webster died and Guy H. Poling became president of both the C. J. Webster Oil and Gas Company and the National Oil Company of Texas. In March, 1938, appellant was appointed receiver of said corporation by a District Court of Bexar County.

The stock ownership of the three corporations involved is not identical, and appellant's contention is that the transfer of the two oil and gas leases involved was for no consideration, or for a wholly inadequate one, resulting in the perpetration of a fraud upon the stockholders and creditors of the Webster Company.

Appellant produced one witness who testified that the 20-acre lease, burdened by the $45,000 oil payment, had, in 1932, a market value of $100,000, and that the 10-acre lease was worth $25,000 to $40,000. The qualifications of this witness as to values were seriously attacked by appellees, but here we must view the evidence in the light most favorable to the appellant, and in so doing we cannot say that there was no evidence as to the value of the leasehold interests involved. It does appear that the 20 and 10-acre tracts were within an oil producing area.

Upon the trial of the case there was considerable testimony with reference to the account books of both the Webster Company and the National Corporation. Appellant placed an accountant upon the stand who testified that from an accounting standpoint, the records of the Webster Company did not show that the corporation received a consideration for the transfer of the leases involved. The conclusions of this witness were not, however, clear and free from doubt. Under cross-examination he, in effect, partially conceded that various book entries would support a theory that as consideration for the leases, the Webster Company has been relieved of the payment of certain debts by their assumption by the other corporations

658

involved. The books of the various corporations disclosed numerous transactions with one another; that certain entries were made and later reversed. The last entry concerning the Webster-National transaction appears to have been made about December, 1935.

A detailed discussion of the evidence in this particular would serve no useful purpose. It is sufficient to say that the true nature of the transactions whereby the National and the Commonwealth acquired the leases is clouded in doubt. The peremptory instruction was given at the close of appellant's case, and the appellees consequently offered no testimony. The question of whether or not there was an actual consideration paid was left unanswered, unless resort be had to surmise and speculation. If the passing of a consideration be conceded, then the amount and consequently the adequacy thereof are still more uncertain and vague. The evidence does raise a suspicion of fraud and certain inter-corporation transactions and book entries do call for explanation.

■ This case, in our opinion, turns upon a question of the onus of proof, or, as sometimes said, the burden of going forward with the evidence.

We have concluded that the burden rested upon the appellees, who were seeking to defeat the cancellation of the assignments in question.

■ The applicable rule of law is so well stated by the Supreme Court of the United States in Geddes v. Anaconda Copper Mining Company, 254 U.S. 590, 41 S.Ct. 209, 212, 65 L.Ed. 425, that we quote from the opinion: "The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a

sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character. This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 588, 23 L.Ed. 328 [329, 330, 3 Mor. Minn.Rep. 688]; Thomas v. Brownville [Ft. K. & P.] R. Co., 109 U.S. 522, 3 S.Ct. 315, 27 L.Ed. 1018; Wardell v. [Union P.] R. Co., 103 U.S. 651, 658, 26 L.Ed. 509 [511, 7 Mor.Minn.Rep. 144]; Corsicana Nat. Bank v. Johnson, 251 U.S. 68, 90, 40 S.Ct. 82, 64 L.Ed. 141 [155]."

C. J. Webster was the dominating and motivating force in the creation of all three corporations involved, as well as the common-law trust which was the predecessor of one of them. At the time of the transfer of the 20-acre lease, he occupied the position of trustee of the C. J. Webster Oil and Gas Company, charged with the duty of acting with utmost good faith toward the holders of the beneficial interests in the trust. Webster was also the president and dominating influence in the National Oil Company of Texas at the time it acquired the 20-acre lease.

The situation with reference to the Commonwealth Oil Company and P. N. McCullough, Webster's employee, is similar in nature and the rule above stated is applicable thereto.

We cannot say, as a matter of law, that appellant's suit is barred by the four-year statute of limitations. Article 5529, Vernon's Ann.Civ.Stats.; Glenn v. Steele, Tex.Sup., 61 S.W.2d 810; Hidalgo County Bank & Trust Co. v. Goodwin, Tex. Civ. App., 137 S.W.2d 161.

For the reasons above stated, we hold that the trial court erred in peremptorily instructing the jury to find for appellees.

The judgment appealed from is reversed and the cause remanded.