DANIEL W. BLUMENTHAL et al., Plaintiffs, v. ROOSEVELT HOTEL, INC., Defendant.

Supreme Court, Special Term, New York County, July 14, 1952.

*Paul, Weiss, Rifkind, Wharton & Garrison* for defendant.

*Geller & Saslow* for plaintiffs.

*Humes, Smith & Andrews* for Wm. H. B. Simpson and others, applicants to intervene as parties plaintiff.

BREITEL, J. Plaintiffs, minority stockholders and voting trust certificate holders, sue for a permanent injunction restraining defendant corporation, which operates the Roosevelt Hotel in New York City, from selling its business, property and assets

to a wholly owned subsidiary of Hilton Hotels Corporation. Plaintiffs have moved for a temporary injunction. Defendant has moved to dismiss the complaint for legal insufficiency. Certain voting trust certificate holders have moved to intervene as parties plaintiff.

It will only be necessary to discuss defendant's motion to dismiss the complaint for legal insufficiency.

The complaint in substance alleges that the Conrad Hilton interests dominate the ownership and management of defendant through control of a majority of its stock and occupancy of its officership and directorate; that they also dominate, control and manage the Hilton Hotels Corporation, and therefore, the newly created subsidiary which has agreed to purchase the business of defendant; that the agreement was not made at "arm's length" but by these majority interests dealing with themselves; that the business is a prosperous one; that the future course of the business will be increasingly better; that the price is not adequate; that the proposed sale is not in the best interests of the corporation or of its stockholders, but rather in the interests of those who control both defendant and the prospective purchaser; and that the purpose is to eliminate or "freeze out" the scattered minority stockholders. Bad faith is charged generally to defendant's management; but otherwise the classic elements of fraud are not spelled out. The action is a representative one, and not a derivative one on behalf of the corporation, and the gravamen of the suit is the alleged purpose to eliminate the minority stockholders' and the methods by which this purpose is sought to be accomplished. Plaintiffs conceded on argument and in their briefs that mere inadequacy of price would not ground an action, but consider inadequacy of price as an element of proof in showing bad faith.

The question is whether minority stockholders and certificate holders, situated as these plaintiffs are, are limited in remedy to an appraisal of their stock under sections 20 and 21 of the Stock Corporation Law or may they avail themselves of remedies in equity attacking the sale as illegal and fraudulent.

Plaintiffs rely on *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185). In that case the court said (pp. 195–196): "When a number of stockholders constitute themselves, or are by the law constituted, the managers of corporate affairs or interests they stand in much the same attitude towards the other minority stockholders that the directors sustain, generally, towards all stockholders, and the law requires of them the utmost good

faith. * * * A court of equity will protect a minority stockholder against the acts or threatened acts of the board of directors or of the managing stockholders of the corporation, which violate the fiduciary relation and are directly injurious to the stockholders. The statute empowers the directors and stockholders, under the prescribed procedure, to dissolve the corporation. The plaintiff took his stock subject to the provisions of the statute. Judicial authority does not extend to enjoining the exercise of a right conferred by legislative authority. The courts cannot pass upon the question of the expediency of the dissolution, for that is the very question which the legislature has authorized the board of directors and the stockholders to decide. They can, however, and will, whenever the facts presented to them in the appropriate action demand, inflexibly uphold and enforce, in accordance with established equitable principles, the obligations of the fiduciary relation. The good faith of the individual defendants is a proper and fundamental subject to be adjudged. Bad faith, fraud or other breach of trust constitutes a foundation for equitable relief.''

The court, in sustaining the complaint in the *Kavanaugh* case (*supra,* p. 198), stressed that the action of the majority was '' in bad faith and for the sole purpose of permitting the individual defendants Kavanaugh to dissolve the corporation for the purpose of depreciating the value of the corporate property and the plaintiff's proportionate interest therein.''

Involved in the *Kavanaugh* case (*supra*) was a closed corporation, a scheme and plan to squeeze out the plaintiff, effecting the proposed dissolution of the corporation under the statute, thus throwing the business into a forced sale and for the alleged purpose of depreciating the value of the corporate property and of the plaintiff's proportional interest in it. As a consequence, if plaintiff proved his allegations, he would have shown that the value of his stock would have been irretrievably reduced in value or destroyed. The statutory procedure chosen by defendants in that case to effect their purpose was one under which there was no right in dissenting stockholders to procure an appraisal of their stock. Unless the remedy in equity was provided, plaintiff's property would inevitably be adversely affected.

The principles stated in the *Kavanaugh* case (*supra*) are sound principles of law and equity, but the situation that we have in the instant case is not the same as that involved in the *Kavanaugh* matter.

In this case defendant has sought authority from its stock-holders pursuant to the statutes to sell the entire business, property and assets of its enterprise. The same statutes provide a remedy to dissenting stockholders to procure an appraisal of the value of their stock under sections 20 and 21 of the Stock Corporation Law. It has been decided that where dissenting stockholders have such a remedy, it is an exclusive one. (*Anderson* v. *International Minerals & Chemical Corp.*, 295 N. Y. 343; *Beloff* v. *Consolidated Edison Co. of N. Y.*, 300 N. Y. 11.) The purpose of the appraisal statutes was made clear in the *Anderson* case (*supra*), and that purpose is stated to be one to provide a method by which objections can be fairly composed but in order to enable the proposed corporate action to proceed. The court said at page 350: '' This is plainly one of the cases in which it was intended that the rights of the dissenting minority should be surrendered, subject only to their right, secured by the statute, to fair and just compensation.'' The *Anderson* case involved a consolidation. The *Beloff* case (*supra*) involved a merger. But the principles obviously would be no different when applied to a case involving a sale of all the assets of a corporation.

Plaintiffs contend that the doctrine of the *Kavanaugh* case (*supra*) makes an exception to the exclusive remedy principle for which the *Anderson* and *Beloff* cases (*supra*) stand. They argue that where the bad faith affects the invocation of the statutory procedure, the statutory procedure itself is affected with illegality and as a result will not have the effect of limiting the dissenting stockholder to the appraisal procedure as an exclusive remedy. This would be true if plaintiffs had alleged and could show that the statutory procedure was being deliberately used as one of the instruments of defrauding the plaintiffs by, and with that intention, reducing or destroying the value of their stock. The crux is whether the depreciation of plaintiffs' stock is without remedy. That was the situation in the *Kavanaugh* case. That is not the situation where the appraisal procedure is available to the dissenting stockholder. The difference is due to the fact that in an appraisal proceeding the stockholder is entitled to the full value of the stock prior to the action against which he dissents and including every item of value that can be established. Thus, in the *Beloff* case, at pages 19–20, the court said: '' Plaintiffs argue that an appraisal (of which they did not avail themselves) would not have brought them fair return for their shares, since, as they say, the appraisers

would not have reckoned as an element of value plaintiffs' proportionate interests in Brooklyn Edison's choses of action alleged in counts 2, 3 and 4 of this complaint. Indeed, as plaintiffs show, when other dissenting Brooklyn Edison holders went to an appraisal, the appraisers refused to value those same causes of action. We do not now attempt an all-inclusive listing of the items that such appraisers should add into their totals, any more than this court did in *Matter of Fulton* (257 N. Y., *supra*, at p. 494) but we say again, as in *Matter of Fulton*, and in *Anderson* v. *International Minerals & Chemical Corp.* (295 N. Y., *supra*, at p. 350) that ' every right of a dissenting shareholder is to be appraised and paid for ' (and see *Wall* v. *Anaconda Copper Mining Co.*, 216 F. 242, 244, affd. *sub nom. Wall* v. *Parrot Silver & Copper Co.*, 244 U. S. 407). But, when the legislature has provided for such an appraisal and for appropriate judicial control and review thereof, plaintiffs may not refuse such an appraisal and upset the merger itself, merely on their assertion that the appraisal, if had, would not have done them justice."

A reading of authorities, such as the *Anderson* and *Beloff* cases (*supra*) compels the conclusion that if the *Kavanaugh* case (*supra*) were now to be decided and if with respect to a dissolution proceeding under the statutes a minority stockholder would have a right to have his stock appraised pursuant to the provisions of sections 20 and 21 of the Stock Corporation Law, that complaint would have to be dismissed. The reason would be that no longer could it be said that the plaintiff had no remedy available at law, under which he could receive the full value of his stock.

There is a more profound principle explicit in the *Beloff* case (*supra*). The court said, at page 19: " In short, the merged corporation's shareholder has only one real right; to have the value of his holding protected, and that protection is given him by his right to an appraisal (see *Voeller* v. *Neilston Warehouse Co.*, 311 U. S. 531, 535). He has no right to stay in the picture, to go along into the merger, or to share in its future benefits   *   *   *   In none of this do we see any deprivation of due process, or of contract rights." In effect, therefore, a stockholder has no constitutionally protected right to continue as a stockholder so long as the value of his interest is compensable.

It should be noted too that in the *Beloff* case (*supra*) the defendant corporation was, as it must have been under the

statute, the owner of 95% or more of the stock of the corporation to be merged with it. The merger plan provided for buying out minority stockholders at $135 per share, with a right under section 21 of the Stock Corporation Law, to appraisal if there was dissatisfaction with the price. While the complaint in the *Beloff* case did not allege the conclusory words of bad faith, all the other elements that are present in the complaint in this action were spelled out. It was charged that defendant corporation dominated the corporation to be merged; that it took advantage of its dominant position to benefit itself to the latter's detriment; and the effect of the merger was, of course, to eliminate the minority stockholders. The case of *Blumner* v. *Federated Dept. Stores* (99 N. Y. S. 2d 691) involves no different principle. There too, in a reorganization, a dominant corporation was absorbing an affiliate of which it controlled more than 90% of the stock and as a result of which reorganization the minority stockholders would have their voting interest reduced. While the decision in that action turned on matters *not* material to this action, Mr. Justice GREENBERG in his opinion makes it clear that the appraisal procedure is the exclusive remedy available to the plaintiff and that no issue of illegality had been tendered. Nor is an issue of illegality tendered in this case. Merely the use of the words " bad faith " will not raise such an issue. Merely to seek to eliminate minority stockholders does not tender such an issue. Illegality would be tendered if the scheme used were such, whether with the use of the statute or without, as to effect a fraudulent injury to the value of plaintiff's stock not reparable by a remedy at law.

One other matter remains to be considered on this motion. The issue has been raised as to whether the right of appraisal exists in behalf of voting trust certificate holders. *Matter of Bacon (Susquehanna Silk Mills)* (287 N. Y. 1) is determinative of the question. A reading of that opinion indicates that a certificate holder has a right of appraisal. He may have lost the right of appraisal by conferring a consent to the action out of which he now seeks an appraisal by having granted that consent to the trustee in the original voting trust agreement. Or he may consent to it later at a meeting of certificate holders. If he did consent, earlier or later, he has waived the remedy otherwise available to him. If he did not consent, under the ruling in the *Bacon* case (*supra*), he still has the right of appraisal, provided, of course, he follows the procedure laid down in section 21 of the Stock Corporation Law. A question may be raised as to

whether under a particular voting trust agreement such a consent in advance has been conferred, but that becomes a question of specific fact, and that is not a matter to be determined by this court in this action.

Accordingly, the motion to dismiss the complaint is granted. The motions for a temporary injunction and for intervention by certain certificate holders as parties plaintiff in the action are denied, any discussion of these motions being rendered unnecessary by virtue of the decision on the motion to dismiss the complaint.