### The COUNTRY CLUB OF TYLER, TEXAS, Appellant,

v.

### R. M. McLAUGHLIN et al., Appellees.

#### No. 6933.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 28, 1957.

Rehearing Denied March 28, 1957.

Johnson & Hathaway, Tyler, for appellant.

Truman Warren, Tyler, for appellees.

FANNING, Justice.

R. M. McLaughlin and seven other minority stockholders of the Country Club of Tyler, Texas, a corporation, sought an injunction against said Corporation and its officers for the purpose of restraining them from conveying the surface of various one-acre tracts of the Corporation's land to each of the individual stockholders pursuant to a certain resolution (and amendments thereto) passed by a majority of the stockholders of the Corporation, and also sought to enjoin the Corporation and its officers from paying from the corporate funds any engineering, surveying, and attorney's fees and any other bills in connection with the attempts of the defendants to convey or dispose of the corporate land, as proposed in said resolution. The trial court, after hearing the evidence, entered judgment permanently enjoining the defendants from conveying any of the land in question under the resolution in question and permanently enjoining defendants from paying the expenses complained of. The trial court filed original and additional findings of fact and conclusions of law. Defendants have appealed.

The Country Club of Tyler, Texas, was duly incorporated under the laws of Texas

on April 4, 1907, for a term of 50 years. Its charter provides:

"This Association is formed for the purpose of constructing, maintaining and operating club houses, fishing lakes, parks and grounds, for fishing, boating, and other innocent sports, and owning and leasing such land and lakes as may be necessary for such purposes."

The By-laws, Rules and Regulations of the Corporation provided, among other things, the following:

"All members of the club shall have equal rights and privileges on the grounds and waters of the club.

"Any member desiring to build a boat house or cottage on the club premises shall first get permission and a location from the Board of Directors thru the Secretary and shall make such determination known in writing. The Secretary shall keep a permanent record of such permission and location. No member will be allowed more than 100 feet of lake frontage for cottages or boat house, and all buildings and fences must be confined within two parallel lines running at right angles from the water front, and 100 feet apart. A member must build on location within 12 months or forfeit claim to location.

"Any structure or improvements placed on the property of the club by a member shall be and remain personal property and shall not become a fixture attached to vality (realty) of the club. Such member shall have the privilege of removing such structure or improvements or personal property that they might place on the premises of the club at any time and is retroactive and shall apply to all members now owning or having such personal property on the premises of the club."

Prior to 1943 it appears that the surface of the respective sites of land now occupied by the 31 stockholders were assigned to the occupying stockholders so as to grant them a license to occupy said sites during the existence of the Corporation, although actual title to the land remained in the Corporation. During the course of the intervening years substantial improvements were constructed on the various sites, and some homes exceeding $20,000 in value were built thereon and some of the stockholders kept same as their permanent residences. There was testimony to the effect that the shares of stock and improvements on the sites assigned thereto could not be easily sold because they could not be easily financed due to the fact that the parties did not have title to the land upon which their improvements were placed.

On November 3, 1955, the Corporation held a special meeting of its stockholders for the purpose of conveying the legal title to all of the sites of land then occupied by the stockholders to the respective stockholders and at such meeting it was decided (by a vote of 23 for and 8 against) to convey such tracts and a resolution authorizing such acts and amending its By-laws was passed. Specimen deeds were prepared and on January 17, 1956, the stockholders met at a meeting specially called and passed an amended resolution (by a vote of 23 for to 8 against) authorizing the execution of the deeds in question in accordance with the form of the specimen deeds submitted. This resolution, as amended, among other things, provided: That the action of the Corporation on November 3, 1955, to require that the Rules and Regulations and By-laws of the Club, save and except the 100-foot limitation rule, should be contained in all deeds to the stockholders conveying the surface rights to the sites they then occupied, be rescinded; that the amount of land deeded to each stockholder be restricted to one acre or that fraction then occupied by the stockholder and that the continued use of the land then presently occupied remain the same with option to purchase the land then maintained if it was ever sold; that the stockholders stand the expense of surveying the property and that

if the Corporation property was ever partitioned among the stockholders or upon dissolution, the one acre or that fractional part of an acre formerly deeded to the stockholder was to be deducted in any such final settlement, dissolution or partition from the land or assets to which the stockholders would otherwise be entitled.

The trial court, in its original findings of fact, among other things, found: That the Club owned 153.46 acres of land, of which 61.52 acres was under water as a lake; that some of the land was not suitable for building sites and that all of the land suitable for building sites was assigned and occupied by stockholders; that the locations on the East side, South side, and North side of the lake were more valuable than locations on the West side of the lake and that one acre of land on the East side, South side or North side of the lake was more valuable than one acre of land on the West side of the lake; that the Club would not be benefited by the proposed conveyances to the stockholders, other than not having to pay the taxes on the real estate conveyed and the Federal taxes on the dues collected each year; that the corporate stock of the Club as well as the remaining real property of the Club would be diminished in value by the proposed conveyances; that the owners of the shares of stock in the Club would be benefited personally by the conveyances, some more than others; that exclusive of the one acre to be conveyed to them, some of the stockholders had two or more acres of land of the Club under their control and if such members sold the one acre to be conveyed to them by the Club, they would still have other lands of the Club under their control where they could erect another building thereon; that practically all of the stockholders on the West side (who were the plaintiffs in this suit) would not have any land left to them if they should sell the one-acre tract to be conveyed to them by the Club, and could not erect another house at the lake; that some owners of shares of stock in the Club had better and more valuable improvements on the lots assigned to them than others and that most of the improvements on the West side of the lake were of less value than the improvements on other locations on the lake; that when sales of a share of stock had been made that the improvements went with the sale of the stock and the price of the share of stock was controlled by the location and value of the improvements; and that expenses of surveying fees and attorney's fees had been incurred in connection with the proposed conveyances in question.

The trial court in his original conclusions of law, among other things, concluded to the effect that the proposed conveyances in question and the proposed payment of expenses in connection therewith, would be ultra vires acts of the Corporation, which ought to be enjoined.

The trial court in its additional findings of fact, made at the request of defendants, quoted the amendments to the resolution in question, which amendments are hereinbefore referred to, and further found: That the stock certificates did not have any restrictions as to transferability endorsed on the face thereof; that after the conveyances in question the Corporation would still retain sufficient assets in excess of any judgment for damages that plaintiffs might obtain as a result of the conveyances in question; that the market value of the particular lakesites had been largely determined by the value of the improvements placed thereon by the individual stockholders; that the resolution was passed by a vote of 23 for and 8 against; and that there was no evidence of fraud on the part of the majority stockholders. The trial court in its additional conclusions of law, made at the request of defendants, concluded: That defendant Corporation was a solvent corporation actively functioning and operating; that the intention of the majority stockholders was to continue the existence and operation of the Corporation after the conveyances of the tracts in question; that the Corporation was not prohibited from passing resolutions or taking other

action which would prevent or restrict the use of corporate land occupied by the stockholders but not conveyed in the proposed conveyances; and that the By-laws of the defendant Corporation were in effect amended so as to permit a conveyance of land to the stockholders by virtue of the official action of the Corporation through its stockholders at its meeting on November 3, 1955. The trial court partially refused two of defendants' additional requested findings of fact, which matters we deem immaterial and unnecessary to quote or refer to here, and the trial court also refused and denied various other additional and amended findings and conclusions requested by defendants.

Appellants present 25 points wherein they contend that the trial court erred in making its various fact findings and conclusions of law, and in denying and refusing various requested additional and amended findings of fact and conclusions of law requested by defendants. Appellants in these points contend, among other things, that the proposed acts in question of the Corporation were not ultra vires, that the proposed deeds would be based upon a valuable consideration, and that plaintiffs were not entitled to equitable relief because they failed to show that they did not have an adequate remedy at law.

The eight plaintiff stockholders had locations on the West side of the lake which were less valuable than the locations held by the other 23 stockholders on other portions of the Club property. The 23 stockholders voted for the resolution and the 8 stockholders voted against it. Appellants contend, among other things, that the proposed deeds were supported by a sufficient consideration in that benefit would flow therefrom to the Corporation in the form of a reduced tax load and that the making of such deeds would enhance the market value of the stock and remaining real estate of defendant Corporation, etc. In this connection, appellants also contend that a consideration would flow to the Corporation in that the shares of stock and improvements placed on the locations would be enhanced

in value because they could be more easily financed if the stockholders were deeded the surface of the one-acre lots. Under the resolution in question as amended, the stockholders were to be deeded surface rights to the one-acre tracts and the resolution as amended also provided that in event of final settlement, dissolution, or partition of the Corporation property such conveyances should be deducted from the land or assets to which the stockholders would otherwise be entitled. The minerals were excepted and reserved from the proposed conveyances and for a full description of the various terms, provisions, restrictions, convenants and conditions of the deeds in question we respectfully refer to tions, covenants and conditions of the the record.

Article 1320, Vernon's Ann.Civ.St. provides:

"Every private corporation as such has power: * * * To purchase, hold, sell, mortgage or otherwise convey such real estate and personal estate as the purposes of the corporation shall require, and also to take, hold and convey such other property, real, personal, or mixed, or shall be requisite for such corporation to acquire in order to obtain or secure the payment of any indebtedness or liability due, or belonging to, the corporation."

Article 1349, V.A.C.S. provides:

"No corporation, domestic or foreign, doing business in this State, shall employ or use its stock, means, assets or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law."

In 10 Tex.Jur., p. 855, it is stated:

"* * * as to transactions of which not the corporation but some individual officer of the corporation receives the benefit, they are deemed to be without the powers of the corporation.

The standpoint taken by the courts is, in fact, that the legislature intended, by its grant of powers to any corporation, that they should be exercised for the benefit of the corporation; and this point of view appears to be justified by the provisions of the general corporation law."

In 10 Tex.Jur., p. 856, it is stated:

"In harmony with the beneficial theory of corporate powers, it is held that, where individual officers or stockholders alone will benefit, the presumption is that the transaction is outside of the powers of the corporation. And where a transaction was shown to have been partly for the benefit of the corporation and partly for the benefit of one of its officers, it was held to prevail against the corporation only to the extent that the corporation received consideration from the transaction. *It is further generally held that direct benefit to the corporation must accrue from the transaction, and that it is not sufficient that some indirect benefit will accrue.*"

■ In Kirby v. Fitzgerald, Tex.Civ. App., 57 S.W.2d 362, 368, affirmed by Supreme Court in 126 Tex. 411, 89 S.W.2d 408, it is stated:

"Under article 1349 the corporation is inhibited from using its assets for any purpose other than to accomplish the legitimate business of its creation. As we view it the statute enacts a limitation upon the power of the corporation in the matter of its property that it shall not divert its funds from that declared in its charter, and, to do otherwise than permitted, the corporation would be acting beyond the ambit of its corporate powers."

The Supreme Court of Texas in the case of North Side Railway Co., v. Worthington, 88 Tex. 562, 30 S.W. 1055, 1056, in discussing the beneficial theory with respect to corporate acts, and particularly with respect to whether such benefit must be direct to the corporation rather than indirect, states:

"It is contended on behalf of the plaintiffs in error that the execution of the bonds was ultra vires, and that, therefore, they are void. In determining this question, we may recur to a few leading principles. Corporations are the creatures of the law, and they can only exercise such powers as are granted by the law of their creation. An express grant, however, is not necessary. In every express grant there is implied a power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly conferred. The difficulty arises in any particular case whenever we attempt to determine whether the power of a corporation to do an act can be implied or not. The question has given rise to much litigious controversy and to much conflict of decision. It is not easy to lay down a rule by which the question may be determined; but the following, as announced by a well-known text writer, commends itself, not only as being reasonable in itself, but also as being in accord with the great weight of authority. 'Whatever be a company's legitimate business, the company may foster it by all the usual means. But it may not go beyond this; it may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have, however, determined that such means shall be direct, not indirect,—i. e. that a company shall not enter into engagements, as the rendering of assistance to other undertakings, from which it anticipates a benefit to itself, not immediately, but mediately by reaction, as it were, from the success of the operations thus encouraged; all such proceedings inevitably tending to breaches of duty on part of the directors, to abandonment of its peculiar objects on part of the corporation.' Green Brice,

Ultra Vires, 88. In short, if the means be such as are usually resorted to, and a direct method of accomplishing the purpose of the incorporation, they are within its powers. *If they be unusual, and tend in an indirect manner only to promote its interests, they are held to be ultra vires.*" (Emphasis added.)

Also in W. C. Bowman Lbr. Co. v. Pierson, 110 Tex. 543, 221 S.W. 930, 931, 11 A.L.R. 547, it is stated:

"A corporation formed for the prosecution of a business may foster that business by necessary or appropriate means—those means which are direct, in their nature related to the objects of the corporation, and by whose employment those objects will be directly furthered. Under the pretense of fostering its own business, or even for that avowed purpose, it can not, however, entangle itself in engagements or enterprises not necessary or reasonably appropriate to the advancement of its interests, from which it will receive only an indirect or remote benefit, if any, and with which therefore, as tested by its charter powers and their objects, it can have no true concern."

We have carefully reviewed the record and are of the opinion that the fact findings of the trial court are sufficiently supported by evidence of probative force.

■ The proposed conveyances in question we think are clearly *unusual* for a corporation such as defendant Corporation to attempt to make. These conveyances would benefit the individual stockholders personally in varying and differing degrees but would not *directly* benefit the corporation itself. The trial court found, upon what we deem to be sufficient evidence, that the Club would not be benefited by the proposed conveyances to the stockholders, other than not having to pay the taxes on the real estate conveyed and the Federal tax on the dues collected each year, and that the corporate stock of the club would

be diminished in value by the proposed conveyances. We think the indirect benefit of a reduced tax load and any indirect benefit which the Corporation might receive by virtue of the shares and sites being more easily financed by reason of the conveyances in question, would not constitute sufficient consideration to justify the Corporation's unusual gifts of its lands to its stockholders to the detriment of the Corporation itself on the whole.

We think the trial court correctly concluded that the proposed conveyances in question, together with the proposed payment by the Corporation of engineering, surveying, and attorney's fees and other expenses incurred in connection therewith, would be ultra vires acts of the Corporation.

■ Under this record we think it is clear that plaintiffs did not have an adequate remedy at law and were entitled to the equitable relief granted by the trial court.

An examination of the record will reveal that several witnesses testified to the effect that plaintiffs would suffer pecuniary damages if the proposed conveyances were made but no witness was able to estimate the extent or amounts of such damages.

In 28 Am.Jur. p. 236, it is stated:

"It is not enough that there is a remedy at law. But the remedy, to preclude injunction, must be certain and reasonably prompt, and as practicable and efficient to the ends of justice and its administration, both in respect of the final relief and the mode of obtaining it, as an injunction would be."

■ It has also been held that in proper cases a single stockholder could sue a corporation to restrain or annul an ultra vires act. In Cor.Jur., p. 875, it is stated:

"*A single stockholder may sue the corporation to restrain or annul an ultra vires act. In other words, a single stockholder may enjoin or obtain relief*

**130**

*from the diversion of joint funds to a purpose outside the object for which the corporation was organized. \* \* \* In a proper case, stockholders may apply to a court of equity for a preventive remedy by injunction to restrain those who are administering the affairs of the corporation from doing acts which are ultra vires."* (Emphasis added.)

In 24 Tex.Jur., pp. 136–137, it is stated:

"In determining whether an injunction shall issue, the equities of the case are considered; the conveniences and hardships that may result from the granting or refusing of the writ are balanced. The court will consider whether there is a probability of greater damage to the defendant if the writ be granted than to the plaintiff if it be denied. This rule is most frequently applied to temporary injunctions, *but it is applicable also to final permanent injunctions."* (Emphasis added.)

We think the above-quoted rule of law from Texas Jurisprudence would also sustain the injunction granted by the trial court in this case because: (1) The defendant Corporation itself will not be damaged by being enjoined from giving away its property and expending its funds upon *ultra vires* transactions; and (2) if the injunction were not granted, the eight plaintiff minority stockholders would be damaged in varying amounts which amounts would be difficult to ascertain with exactitude in a suit or suits at law brought to recover damages.

We conclude that the trial court entered a correct judgment which ought to be affirmed.

Each and all of appellants' various points have been carefully considered and none of them are deemed to present reversible error under this record, and same are respectfully overruled.

The judgment of the trial court is affirmed.