Otis MASSEY et al., Appellants,

v.

Richard A. FARNSWORTH, Appellee.

No. 13695.

Court of Civil Appeals of Texas.

Houston.

Dec. 7, 1961.

Rehearings Denied Jan. 11, 1962.

Further Rehearings Denied Feb. 1, 1962.

Fulbright, Crooker, Freeman, Bates & Jaworski, Austin C. Wilson and Howard Wolf, Houston, for appellants.

Pat F. Timmons, Chas. W. Bell, John V. Singleton, Jr., and Otto A. Yelton, Jr., Houston; Bell & Singleton, Houston, of counsel, for appellee.

W. James Kronzer, Houston, for appellee, on motion for rehearing.

COLEMAN, Justice.

Appellee has filed a forceful motion for rehearing, and, on reconsidering our opinion, we have determined that it should be withdrawn. Appellee's motion is granted in part as reflected by this opinion.

Richard A. Farnsworth, plaintiff in the trial court and appellee here, sued Otis Massey, Earl C. Calkins, Frank L. Tucker, Mustang Tractor & Equipment Company, Eureka Investment Company and Eureka Credit Corporation [hereinafter referred to as "Old Companies"], Mustang Tractor and Equipment Company of Houston, Eureka Investment Company of Houston and Eureka Credit Corporation of Houston [hereinafter referred to as "New Companies"] in three capacities, (1) as a minority stockholder for the use and benefit of Old Companies, (2) in his individual capacity as a stockholder in Old Companies for his own use and benefit, and (3) as a dissenting shareholder under the Texas Business Corporation Act, V.A.T.S. He alleged a cause of action based on fraud and in the alternative he requested the appointment of an appraiser and the valuation of his stock interests in Old Companies.

The case was submitted to the jury on issues relating to the cause of action for fraud and resulting damages and an issue as to the fair value of plaintiff's stock in Old Companies prior to the sale of their assets. The jury found against appellee on the issues submitted on the derivative cause of action. The court rendered judgment for plaintiff for the amount found by the jury to be the fair value of his stock.

Defendants have appealed to this Court on these Points of Error:

"First Point

"The trial court erred in failing to render and enter judgment that appellee take nothing by his suit because, as a matter of law, appellee was bound by the corporate actions taken by the Old Companies and therefore, was limited to the $151,529.27 set aside as his share of the proceeds of the liquidation and dissolution of the Old Companies since, under the undisputed evidence appellee did not comply with the requirements of Article 5.12A(1) of the Texas Business Corporation Act.

"Second Point

"The trial court erred in submitting Special Issue No. 41 to the jury and rendering and entering judgment in favor of appellee thereon in complete disregard of the mandatory procedure for determining the value of the interests of dissenting shareholders prescribed by Article 5.12 C and D of the Texas Business Corporation Act."

By their First Point appellants assert that the trial court should have entered judgment that plaintiff take nothing. This calls for consideration of two questions: (1) whether or not by reason of the Texas Business Corporation Act the valuation procedure therein provided is exclusive, and (2) whether or not appellee has complied with the provisions of the Act relating to valuation. A number of matters might be voted on at a stockholder's meeting. The fact that one of the stockholders voted against the action taken by the majority would not constitute him a "dissenting

stockholder" as that term is used in the Business Corporation Act. The term is used there to refer to a stockholder who has undertaken to follow the provisions of the Act leading to valuation of and payment for his shares. Prior to the adoption of the Texas Business Corporation Act in 1955, the only statute setting out a procedure for protecting a dissenting shareholder of a Texas corporation was concerned only with the consolidation of building and loan associations. Note, IV Baylor Law Review, 111, at p. 115. Mergers, consolidations and the sale of all of the assets of a solvent corporation could be accomplished only by unanimous consent of the stockholders. Ballentine, Corporations, 667 (Rev.Ed. 1946); Hildebrand, Texas Corporations, Sec. 64. Shareholders could stop proposed mergers or sales, but did not have the right to require the corporation to purchase their shares. Johnson v. Baldwin, 69 S.E.2d 585 (S.Ct.S.C.1952); Anderson v. International Minerals and Chemical Corp., 295 N.Y. 343, 67 N.E.2d 573 (1946). By the Texas Business Corporation Act 80% of the stockholders of a Texas corporation were given the power to merge or consolidate corporations, or to sell all of the assets of a corporation, over the objection of the other 20%. To offset the loss of the power by the minority to block such action, the Act required such corporations to purchase their shares at a value to be determined by the courts of the State after a prescribed valuation procedure. The right which a minority shareholder had at common law to block mergers, consolidations or sales of all assets was not a right of a dissenting shareholder as that term is used in the Act; rather it was a right which any shareholder had who disagreed with the proposed corporate action.

In Meade v. Pacific Gamble Robinson Co., 29 Del.Ch. 406, 51 A.2d 313 (1947), the court said:

"Since the right to an appraisal in lieu of the right to defeat a merger was given by statute, it is not unreasonable to conclude that the statute is exclusive as to the rights given a dissenter who cares to proceed thereunder, at least to the extent the statute fairly purports to cover the subject. See Root v. York Corporation, D.C., 56 F.Supp. 288."

Art. 5.14 of the Texas Business Corporation Act provides: "Nothing contained in part Five of this Act shall ever be construed as * * * abridging any right or rights of a dissenting stockholder under existing laws." While the legislature had not enacted a general law dealing with the rights of dissenting stockholders prior to the adoption of the Texas Business Corporation Act, there was a considerable body of case law in this and other states concerning the rights of minority stockholders. Prior to the effective date of the Texas Business Corporation Act, it had been determined by the Texas courts that a single stockholder could enjoin a corporation from entering into an ultra vires transaction. The Country Club of Tyler, Texas v. R. M. McLaughlin, 300 S.W.2d 124 (Tex.Civ.App., ref., n. r. e.). In the recent case of Popperman v. Rest Haven Cemetery, Inc., 345 S. W.2d 715 (Tex.Sup.Ct.), it was held that the officers and directors of a corporation may enter into contracts with the corporation, but the limitations of this rule were pointed out as follows:

"Closely related to the foregoing principles is the well-established rule that transactions between an officer or director and the corporation are subject to strict scrutiny; it was stated in Zorn v. Brooks, supra, 'that a contract between a corporation and one or all of its officers and directors is not void per se, but that it may be avoided for unfairness or fraud.' [125 Tex. 614, 83 S.W.2d [949], 951]. Previously, this court in Tenison v. Patton, supra [195 Tex. 284, 67 S.W. 92], discussed at some length the problem of contracts between officers and directors and the corporation itself, and recognized that such contracts are binding where the contracting director establishes the fairness of the transaction to the corporation.

See also Texas Auto Co. v. Arbetter, Tex.Civ.App., 1 S.W.2d 334, er. dism.; and Felty v. National Oil Company of Texas, Tex.Civ.App., 155 S.W.2d 656."

Such transactions may be enjoined or set aside. Zorn v. Brooks, 83 S.W.2d 949 (Tex.Com.App., opinion adopted); 14 Tex. Jur.2d, Corporations, § 228 et seq.

■ The Texas Business Corporation Act authorizes a corporation to sell all of its assets, but it does not specifically, or by necessary implication, authorize the directors or majority stockholders of a corporation to sell such assets to themselves, or to a corporation in which they are the sole stockholders, officers and directors. Since the Business Corporation Act does not clearly require a minority stockholder to resort to appraisal in the case of sale of all of the assets of a corporation where such sale results from a fraudulent conspiracy, as was alleged here, or is otherwise unfair to the corporation, or its minority stockholders, the courts should not extend the statute by construction to require it. 58 Columbia Law Review 251; 45 Harvard Law Review 233. We do not think that the legislature intended to weaken the protection afforded minority stockholders by overturning this body of case law by implication.

■ The words "dissenting shareholders", as used in Art. 5.14 of the Business Corporation Act have the same meaning as when used in Art. 5.12. It cannot be argued successfully that the legislature intended by Art. 5.14 to repeal or nullify the previous provisions of the act authorizing mergers and consolidations, which necessarily would follow if "dissenting stockholders" and "minority stockholders" are held to be synonymous terms. If the legislature had intended to preserve all rights recognized by common law as vesting in "minority stockholders" by Art. 5.14, no doubt it would have so provided in plain and unambiguous terms. We hold that the legislature intended this clause to be a savings clause to pre-serve accrued rights. See "Comment of Bar Committee," Vernon's Annotated Texas Civil Statutes, Vol. 3A, pp. 276 et seq. This construction will give full effect to certain provisions of the Act, which otherwise would be contradictory. Martin v. Sheppard, 129 Tex. 110, 102 S.W.2d 1036; Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597. The actions of the stockholders and directors to which appellee dissented, with the exception of the adoption of the provisions of the Act, took place after such adoption. There is no contention that the proceedings by which the provisions of the Act were adopted were had in violation of the statute or the provisions of the charters or by-laws of the corporations. Art. 5.12, viewed as a savings clause, is not applicable here.

Art. 5.12, Texas Business Corporation Act, provides:

"A. In case any shareholder of any domestic corporation lawfully *elects* to exercise his right to dissent from any of the corporate actions referred to in the last preceding Article hereof, the following procedure shall be followed: (emphasis supplied)

"(1) Such shareholder *shall* file with the corporation * * * a written objection * * * setting out that his right to dissent will be exercised if such action be approved * * *. If such corporate action be approved * * * and such shareholder shall not have voted in favor thereof, such shareholder may * * * make written demand * * * for payment of the fair value of his shares. * * * *Any shareholder failing to make demand * * * shall be bound by such corporate action.* (Emphasis supplied.)

"(2) * * * the existing, surviving, or new corporation * * * shall give notice thereof to each dissenting shareholder who has made demand * * for the payment of the fair value of his shares. * * *

"(3) [provision for payment of agreed valuation.]

"B. If, * * * the shareholder and * * * corporation * * * do not so agree [on value], then the dissenting shareholder or the corporation may, * * * file a petition * * asking for a * * * determination of the fair value of such shares by an appraiser to be appointed by the court. * * * [provision for service on corporation, which shall file list of dissenting shareholders and for notice to such shareholders]. *All shareholders thus notified and the corporation shall thereafter be bound by the final judgment of the court.* (Emphasis supplied.)

"C. [provision for determining shareholders who are entitled to valuation of and payment for their shares and for appointment and powers of the appraiser]

"D. [provisions concerning the filing of appraiser's report, exceptions thereto and the judgment of the court] * * *Unless the dissenting shareholder shall file such petition within the time herein limited, such shareholder and persons claiming under him shall be bound by the corporate action to which he seeks to dissent. * * *"*

█ It is apparent from this summary that it was the intention of the legislature that any stockholder who began proceedings for valuation of his shares should pursue such remedy to conclusion and be bound by its outcome, or in the event such shareholder determined that he did not desire to sell his stock, he could withdraw from the proceedings and thereby be bound by the corporate action. It is also apparent that one action and one forum should determine valuation for all dissenting shareholders.

█ The Act, however, does not require any shareholder to elect to dissent. He can disagree with the action of the cor-
poration and, if he believes the proposed action illegal, ultra vires or tainted by fraud, he may at once proceed to take such legal action as may be indicated. If he fails to prevail in such *legal* action, and if he is then unable to follow the statutory procedure for dissent, he will be bound by the corporate action. Note 66 Harvard Law Review, pp. 746 et seq. We hold that the Texas Business Corporation Act requires a stockholder to elect either to pursue such legal as distinguished from equitable remedies, as are available by statute or common law, or else to follow the prescribed procedure for appraisal and payment to him of the value of his stock.

The record reflects that appellee, by proxy, attended the meetings of the Old Companies held on December 20, 1957 and there stated his objections to the proposed action which, by agreement, were reduced to writing and incorporated into the written minutes of each meeting. Thereafter, again by proxy, appellee attended a meeting of the stockholders of Eureka Credit Corporation on January 6, 1958, at which he renewed the objections made previously and, thereafter, presented to the meeting a written instrument directed to the officers, directors and stockholders of Old Companies stating (among other things) his stock interest in the companies and that the "true, fair market value of my stock interest in the three corporations is not less than $312,-000.00, which sum I herewith demand to be paid * * *."

On January 10, 1958, appellee received by mail a notice that the sale had been approved by the stockholders. Appellants made no further effort to follow the valuation procedure as provided by the Act, and now contend that appellee did not make the demand for payment of fair value contemplated by the Act, or, if he did, that such demand was not made within ten days after written notice of the stockholders' action was delivered or mailed to him as required by the Act and that, therefore, he is bound by the corporation action and entitled only to his share of the proceeds of the sale.

■ The written demand presented to Old Companies at the January 6, 1958 meeting complied with the statutory requirements and was timely. As was held in *Duddy v. Conschohocken Printing Co.*, 163 Pa.Super. 150, 60 A.2d 394, the word "within" has a number of recognized meanings including, "Not later than," or "any time before," and "before the expiration of." In the case cited the words "within twenty days after" the merger was effected were held to fix the end, but not the beginning of the period during which the demand had to be made. The reasoning of that case is applicable here. Note, 47 Michigan Law Review, p. 273.

■ However, even if it be considered that appellee's demand was presented prematurely, the demand was continuing in nature, never withdrawn, and became effective as a statutory demand on the same day as, but after, the mailing of the notice of approval. This construction will not make less certain the time for taking future steps required by the Act and will not work inconvenience on any of the parties to the sale. The statute should be construed in such a manner as to make effective the protection afforded the minority stockholder.

■ No further action was required of appellee without prior action by appellants except the filing of his petition in the proper court requesting the appointment of an appraiser and the determination of the value of his stock by the court. We do not have before us the question of the effect of the failure of appellants to follow the prescribed procedure. Since appellee filed a proper petition in a proper court within the time limit prescribed by the Business Corporation Act, he was not by its terms bound by the corporate action and limited to his proportionate share of proceeds of the sale of the assets of Old Companies available for distribution to the stockholders at its dissolution.

■ Since no appraiser was appointed nor appraiser's report filed with the court, it is obvious that the matter was not ready for trial if these matters were material. We think they were material and cannot be waived. No one can say that a consideration of the evidence of value presented to the appraiser and the report subsequently prepared by him and presented to the court would be of no value. It might lead to compromise and settlement by the parties; it might be accepted by the parties and almost certainly would expedite the trial of the issue of value by the court. Sec. subd. C. of Art. 5.12, Texas Business Corporation Act, provides that on the filing of the petition requesting the appointment of an appraiser, a hearing shall be held to determine which shareholders have complied with the act and, after the hearing, that the court *shall* appoint an appraiser. The court is not granted discretion in the matter. There is no provision that at the hearing the court should determine whether or not an appraiser was necessary. It appears that appellee had elected to proceed with valuation and sale of his stock under the provisions of the Act and thereby had waived any right which he otherwise may have been able to assert for damages because of the *particular corporate action to which he had filed his dissent*. We do not here consider the effect such an election may have on stockholders' derivative actions.

Since appellee has preserved no Points of Error complaining of the denial of equitable relief in this case, there is no necessity to determine whether or not it might have been granted or to construe the effect of the Business Corporation Act on causes of action based on equitable grounds.

Appellee assigned as a cross-point the proposition that he is entitled to a judgment against the defendants for $54,000.00 assessed as damages for fraud as well as $312,000.00 which the jury determined to be the fair value of appellee's stock interest in "Old Companies."

In answer to issues submitted to them, the jury found that the individual defendants

entered into a combination to (1) acquire 80% of the stock in "Old Companies," (2) to form "New Companies," (3) to transfer all assets of "Old Companies" to "New Companies" and (4) to exclude plaintiff from participation in stock ownership in "New Companies"; that a purpose of such combination was to defraud plaintiff; that the purpose of the combination was carried into effect and resulted in damage to plaintiff and that the sum of $54,000.00 would reasonably compensate plaintiff, as a minority stockholder in "Old Companies," for the damages he suffered as a result of the fraudulent conduct of the defendants; that the fair value of plaintiff's interest in "Old Companies" on December 19, 1957, was $312,000.00. While appellants made certain objections to the charge they brought forward in their brief no assignments of error relating thereto.

Special Issue No. 14 reads as follows:

"What amount of money, if paid now in cash, would reasonably compensate Plaintiff, Richard A. Farnsworth, as a minority stockholder in the Old Companies, for the damages, if any, referred to in Special Issue No. 12?"

"Answer in dollars and cents, if any."

Special Issue No. 12 reads as follows:

"Do you find from a preponderance of the evidence that the carrying into effect of the purpose of the combination, if any, inquired about in Special Issue No. 1 resulted in damages to Plaintiff Richard A. Farnsworth as a minority stockholder in the Old Companies?"

The court gave no special instructions concerning the elements of damage which might be considered by the jury in answering Special Issue No. 14. Neither party requested such an instruction or objected to the charge of the court by reason of the failure of the court to include such an instruction. Neither party contends in this Court that the court's charge was erroneous in that respect. It appears that all parties and the court intended that the answer to this issue would encompass all damage which the plaintiff had suffered as a minority stockholder by reason of the conspiracy to defraud alleged and found by the jury.

By reason of plaintiff's alternative count for valuation under the Texas Business Corporation Act the court submitted Special Issue No. 41 reading:

"From a preponderance of the evidence what do you find to have been the fair value on December 19, 1957, of Plaintiff Richard A. Farnsworth's 10.-4167% interest in the Old Companies?

"Answer in dollars and cents."

To which the jury answered "$312,000."

"In connection with your answer to the foregoing Special Issue No. 41, you are instructed by the Court that by the term 'fair value' is meant that value of the Old Companies, arrived at after a consideration of book value, the nature and value of the property which comprises the tangible assets of those companies, the amount and nature of the liabilities of such companies, the value of the good will, if any, of the companies, including their record of earnings, their good name and reputation, if any, the type of business conducted by them, the demand for the products, and business conditions generally on or about December 19, 1957."

It will be noted that this issue inquired as to the fair value of plaintiff's interest in Old Companies "On December 19, 1957." The first meeting of the stockholders was held December 20, 1957 and the last meeting January 6, 1958. At these meetings a sale of the assets of the various "Old Companies" was authorized and a plan of dissolution adopted. The assets were transferred on December 31, 1957 and the "Old Companies" were formally dissolved December 22, 1958. In May of 1958 the directors of "Old Com-

panies" determined that plaintiff's share of the assets of "Old Companies" was $151,529.27, which amount was set aside for him, but plaintiff has not claimed this money since he contends that such amount does not represent true fair value of the assets.

Art. 5.12, V.A.T.S., Business Corporation Act, provides in part: " * * * The fair value of such shares shall be the value thereof as of the day before the vote was taken authorizing such corporate action [sale of all assets], * * *."

■ We do not think, under this record, that Special Issue No. 41 was intended as a damage issue or is appropriate as such. The pleadings of the parties and their conduct in the trial court as reflected in the record also support this conclusion. A case may not be tried and submitted to the jury on one theory and argued on appeal on an entirely different theory. 3 Tex.Jur.2d, § 371.

■ If appellee is entitled to a judgment on the verdict of the jury on the theory that their answers sustain his cause of action for conversion of his interest in "Old Companies," as contended by appellee in this Court, he is entitled to damages in the sum of $54,000.00 as found by the jury in answer to Special Issue No. 14. However, the cause of action pled by appellee was on the theory that appellants had conspired together to acquire appellee's interests in "Old Companies" at less than fair value. This is not a suit for damages by reason of the corporate action to which appellee dissented. This cause of action, based on conspiracy to defraud, encompasses the corporate action and had its inception prior to the adoption of the Business Corporation Act. The adoption of the provision of the Act, appellee alleges, was for the purpose of giving protective coloration to the fraudulent scheme. This theory was submitted to the jury. The jury found that appellee had been damaged in the sum of $54,000.00. By asking for such damages, appellee confirmed the sale and waived any

right he might have had to rescission since he is not entitled to damage for the taking of his interest at less than fair value and recovery of the interest also. Appellee is the owner of his proportionate share of the assets of the dissolved corporations which the evidence shows to amount to $151,529.27. This means that appellee's total compensation for his interest would be the sum of damages ($54,000.00) and share of assets ($151,529.27), or $205,529.27, an amount less than the jury found to be the fair value of appellee's interest in the companies. Since there was no contention that the jury's answers were in conflict in the motion for new trial, there is no assignment of error to that effect in this Court.

■ Appellee alleged and the jury found that the conspiracy was formed before the "Old Companies" had adopted the Texas Business Corporation Act. Some of the overt acts envisioned by the plan, i. e., acquiring 80% of the stock in "Old Companies," were complete before the companies adopted the provisions of the Act. "A purpose unlawful in itself or in the means to be employed for its accomplishment is a requisite of an actionable conspiracy." 15 C.J.S. Conspiracy § 3, p. 998. "The means contemplated to effect the purpose of a combination are material only if the purpose is lawful, in which case illegal means taint the whole transaction." Ibid, Conspiracy § 4, p. 999. Here the purpose of the conspiracy as found by the jury, to defraud plaintiff, was unlawful. The means employed, sale of all assets of the companies to "New Companies" wholly owned by the conspirators at less than fair value, were also unlawful.

■ "Conspirators are jointly and severally liable for all damage resulting from the conspiracy, each being responsible for the acts of the other in furthering the common design." 15 C.J.S. Conspiracy § 18, p. 1028.

■ The corporations were co-conspirators and equally as liable for damages as

were the individual defendants under the facts of this case. The provisions of the Texas Business Corporation Act are not available as a defense since the adoption of the Act and the proceedings thereunder for the sale of assets were merely the means adopted to attain an unlawful end in furtherance of a conspiracy already in being. "Where parties, in pursuance of a conspiracy or combination for that purpose, fraudulently make use of legal proceedings to injure another, an action lies against them, at the suit of the person injured, to recover damages sustained." 15 C.J.S. Conspiracy § 16, p. 1027.

■■■■■ Appellants have chosen to base their appeal to this Court solely on grounds relating to the Texas Business Corporation Act. They do not complain that the judgment is excessive or that it is not supported by the evidence. They complain of no procedural errors. It appears that this position was taken because the trial court based its judgment solely on the answer made by the jury to Special Issue No. 41. The judgment reads in part: "It is Ordered, Adjudged and Decreed by the court that plaintiff Richard A. Farnsworth do have and recover * * * the sum of Three Hundred Twelve Thousand and No/100 ($312,-000) *being the amount found by the jury to have been the fair value on December 19, 1957, of Plaintiff Richard A. Farnsworth's 10.4167% interest * * *.*" (Italics supplied.) There follows in the judgment a provision for interest and costs and the further provision decreeing that all relief sought by either party, and not specifically granted, be denied. The portion of the judgment emphasized might lead one to the conclusion that the court was rendering judgment on the appellee's alternative count for valuation. However, it is merely descriptive, and is not part of the judgment. Baxter v. Dallas County Levee Dist., 5 Cir., 131 F.2d 434; Davis v. Hemphill, Tex.Civ.App., 243 S.W. 691. If a judgment is capable of two constructions, only that construction which correctly applies the law will be adopted. McDonald,

Texas Civil Practice, § 17.10, p. 1337. Appellee was entitled to a judgment on the answers made by the jury to the special issues submitted. Appellants' second assignment points out the error of the court in rendering judgment based on Special Issue No. 41. It is evident that the recovery awarded to appellee is based in part on the answer to this issue and constitutes error. Special Issue No. 41 should have been disregarded by the court since it was submitted in connection with appellee's alternative count for valuation on which he is entitled to no recovery.

■■■ It is the duty of this Court to render the judgment which properly should have been rendered by the trial court. The judgment of the trial court is reformed and hereby rendered against appellants and in favor of appellee in the sum of $205,529.-27, with interest on $151,529.27 from the 22nd day of December, 1958, at the rate of 6%, and on $54,000.00 from the 8th day of April, 1960, at the rate of 6%. The costs in the trial court and in this Court are assessed one-half against appellants and one-half against appellee.

The judgment as reformed is affirmed.

### On Motions for Rehearing

Appellee has filed a second motion for rehearing in which he strongly re-urges his contention that appellants have waived their objection to the failure of the trial court to appoint an appraiser by proceeding to trial without first presenting to the trial court a plea in abatement.

■■■ A proceeding for valuation of shares is purely a creature of statute. A stockholder did not have a cause of action at common law to require the corporation to purchase his shares merely because he objected to the action of the majority ·in selling all of the assets of the corporation. The Business Corporation Act created the right and prescribed the procedure to be followed by the dissenting stockholder. The Act does not authorize the shareholder

to bring suit for the value of his shares. It authorizes him to "file a petition in any court of competent jurisdiction in the county in which the principal office of the corporation is located, asking for a finding and determination of the fair value of such shares by an appraiser to be appointed by the court." Art. 5.12, subd. B, Texas Business Corporation Act. Section D of the Act provides for the appraiser to file his report with the clerk of the court and that " * * * Such report shall be subject to exceptions to be heard before the court both upon the law and the facts. The court shall by its judgment determine the fair value of the shares * * *." Until the appraiser's report and the exceptions thereto, if any, are filed, there is nothing before the court except the petition for determination of the fair value of the shares *by an appraiser*. There are no pleadings in support of which evidence might be introduced and issues drawn. The only judgment authorized by the Act is one based on such portions of the appraiser's report to which no exceptions are filed and the court's determination of such issues as are raised by exceptions to the report. We are impelled to the conclusion that the appointment of the appraiser and the filing of his report is jurisdictional for the reason that the question of valuation cannot be brought before the court for determination in any manner except as prescribed by the Texas Business Corporation Act. The pleadings authorized by this Act cannot be made to conform to the requirements of Rules 22, 45, 47, 83 and 85, Texas Rules of Civil Procedure, setting forth requirements for initiating and defending civil suits.

 Appellee sought relief in alternative counts. He failed to show himself entitled to valuation of his shares by the court. He did plead a cause of action based on fraudulent conspiracy and secured jury findings supporting it. We are of the opinion that he is not entitled to damages for fraudulent conspiracy and also valuation of his shares under the Texas Business Corporation Act. Since judgment cannot be rendered on the count for valuation, judgment has been rendered on the count for fraudulent conspiracy. One element of such damage would be the reduction in value of his shares by reason of the sale made the basis of the suit. Since the jury was authorized to consider all proper elements of damage by the court's charge, we must presume that they did so in making their answer to special issue No. 14. If we should reverse this cause for the purpose of permitting further proceedings in valuation, we would be authorizing appellee a double recovery. If we give no effect to the jury answers to the issues on actionable conspiracy, we would be permitting appellee a new trial of a cause of action where there was no error other than in rendering judgment on the verdict of the jury, an error which we are authorized to correct, and now have corrected.

Appellee's motion for rehearing is denied.

 Appellants have also filed a motion for rehearing in which they contend that as a matter of law there was no actionable conspiracy. They contend that " * * * there was not the slightest dispute about the occurrence of the controlling factual transactions; the question was purely and simply a legal one,—were the acts of appellants lawful?" In our former opinion we answered this question in the negative, however, it is possible that our opinion could be misinterpreted. As we stated in our original opinion, appellee charged appellants with fraud in that they conspired together to acquire the assets of "Old Companies" *for themselves* at less than their fair market value, thereby injuring appellee. We hold that the sale of all of the assets of "Old Companies" to "New Companies" at a price far less than fair market value, as found by the jury, was fraudulent. The answers of the jury establish that the sale of the assets of "Old Companies" by the directors was a sale to themselves. Popperman v. Rest Haven Cemetery, Inc., Tex., 345 S.W.2d 715, and

the authorities cited therein, demonstrate that the contract of a corporation with a director may be avoided for fraud or unfairness. The sale of corporate property at a price much less than its fair value by the directors and officers of a corporation to a corporation owned by them, incorporated for the purpose of purchasing such assets and conducting the identical business previously conducted by the selling corporation, is a species of fraud. Such a sale would not be permitted over the objection of a nonparticipating stockholder if less than "substantially all" of the assets were sold in such a transaction and such stockholder would not be forced into the position of a dissenting stockholder under the terms of the Business Corporation Act. The provisions of that Act authorizing the sale of all or substantially all of the assets of a corporation over the protests of minority stockholders does not authorize the directors of a corporation to sell to themselves. If the assets of "Old Companies" had been sold to another corporation in an arm's length transaction, appellee's objection could not have prevented the sale, nor would such a transaction have afforded the basis for a suit for damages. We recognize that the courts of New York in Beloff v. Consolidated Edison Co., 300 N.Y. 11, 87 N.E.2d 561, Ct.App.N.Y.1949, and Blumenthal v. Roosevelt Hotel, 202 Misc. 988, 115 N.Y.S.2d 52 and possibly, California, Beechwood Securities Corp. v. Associated Oil Co., 104 F.2d 537, 9th Cir. 1939, have held that there is no constitutional right to continue as stockholder or to follow .n investment into a consolidated corporation. However, we do not think that such decisions, in view of the policy of this State with reference to transactions with a corporation by its officers and directors, require us to hold that the Texas Business Corporation Act authorizes unfair or fraudulent transactions between a corporation and its officers and directors or require a minority stockholder complaining of such transactions to seek valuation as his sole remedy.

Appellants also contend in their motion for rehearing, for the first time, that the answer of the jury to the damage issue is supported by no evidence. There was in evidence the amount realized from the sale by the corporation and a great deal of evidence concerning the properties owned by the corporation and their values as well as the earnings of both "Old Companies" and "New Companies." While the evidence is too voluminous to quote, we have carefully considered the record and find that the answer made by the jury properly is supported by . competent evidence.

Appellants' motion for rehearing is denied.

In answer to appellee's request, additional findings and statements of evidence are made as follows:

I. Appellee questions the correctness of the statement found in our opinion that Special Issue No. 41 was not intended as a damage issue or appropriate as such. He further states that it was his contention, recognized by all parties, including the trial judge, that said issue was an inquiry as to the "fair value of appellee's stock interest * * *". We agree with this contention, but do not agree that this issue, designed to secure a finding as to fair value, is a damage issue appropriate to a cause of action for actionable conspiracy. However, we do consider that the answer of the jury properly could be considered as establishing that the sale was made for an inadequate consideration and should be considered, in connection with the other issues submitted, in determining whether or not judgment should have been rendered on the cause of action for actionable conspiracy. Since we are in agreement with appellee that the issue was a fair value issue, we do not consider it necessary to elaborate further in response to Request No. 1.

II. It is the opinion of the Court that appellee submitted the case to the jury on

alternative counts, (1) actionable conspiracy, and (2) statutory valuation under the Texas Business Corporation Act. In this Court appellee has spent considerable time arguing that he is entitled to judgment on a cause of action for conversion of his stock interest.

III. Interest on the sum of $151,-529.27 was allowed from the date of formal dissolution of the corporation for the reason that after the corporation was dissolved appellee was entitled to his share of the assets on demand. Prior to dissolution of the corporation the proceeds from the sale of the assets were the property of the corporations. It appears in the record that the funds were tendered to appellee only on conditions which became improper on dissolution. Conditions might properly be attached to a tender made at a time when there was no obligation to pay.